ORTEGA, J.
*101 *613 ORS 137.690, the statute that enacted Ballot Measure 73, imposes a mandatory minimum term of 25 years for a person who has been convicted of more than one "major felony sex crime."[1] Included among the sex crimes defined as "major felony sex crime[s]" is the crime of using a child in a display of sexually explicit conduct, ORS 163.670.[2] Defendant was sentenced under Ballot Measure 73 for 10 convictions for conduct that occurred over a period of about a year and a half while he was a teenager, some of it while he was underage, and which involved requesting and receiving, by text messaging, nude images of girls who were two to four years younger than he was. Put succinctly, defendant engaged in what is commonly known as "sexting." See 293 Or. App. at 634, 430 P.3d at 112 ("[R]equesting and sending sexually explicit self-portraits via a camera phone is a common enough behavior to have engendered the term 'sexting.' "). In this consolidated criminal appeal,[3] defendant seeks a remand for resentencing of the 25-year sentences that the trial court imposed for those convictions.
*614 Defendant asserts that the sentences were disproportionate as applied to him in violation of Article I, section 16, of the Oregon Constitution (providing that "all penalties shall be proportioned to the offense").[4] In defendant's view, the 25-year sentences, which were imposed concurrently to each other and to the sentences he received for other sexual crimes, shock the moral sense of reasonable people; he argues that his conduct did not warrant those penalties when the factors set out by the Supreme Court in State v. Rodriguez/Buck , 347 Or. 46, 58, 217 P.3d 659 (2009), to determine proportionality under Article I, section 16, are applied to the circumstances of his case. The crux of the state's argument is that defendant's conduct was "extremely grave" and that, because it was not "innocuous," the trial court correctly determined that the sentences imposed on defendant would not shock the moral sense of reasonable people. We agree with defendant and, therefore, reverse and remand the sentences imposed under ORS 137.690.
I. ARTICLE I, SECTION 16, PROPORTIONALITY
The Supreme Court has not yet considered a facial or as-applied Article I, section 16, challenge to ORS 137.690 ; our resolution of this as-applied challenge to defendant's 25-year prison sentences imposed under that *102 statute is informed by our understanding of the court's case law addressing whether prison sentences imposed under two other sentencing provisions- ORS 137.719 and ORS 137.700 -run afoul of the constitutional prohibition against disproportionate sentences under Article I, section 16. A review of that case law provides context for the court's treatment of recidivism in proportionality review and illuminates the nature of the review that we are called upon to undertake in this case.
ORS 137.719(1) is a "recidivism statute" that requires the imposition of life imprisonment without the possibility of parole for a felony sex crime if a defendant has previously been convicted of two felony sex crimes. The court considered a facial challenge to that statute in *615 Statev. Wheeler, 343 Or. 652, 654, 175 P.3d 438 (2007), and later considered the proportionality of the statute as applied to the defendants in State v. Althouse , 359 Or. 668, 375 P.3d 475 (2016), and State v. Davidson , 360 Or. 370, 380 P.3d 963 (2016). ORS 137.700, the codification of Ballot Measure 11, imposes mandatory minimum prison sentences for a host of crimes against persons. The court has also considered as-applied proportionality challenges to the imposition of 75-month prison sentences for first-degree sexual abuse under that statute, in Rodriguez/Buck and State v. Ryan , 361 Or. 602, 396 P.3d 867 (2017).
In Wheeler , the court examined the framers' intent in adopting Article I, section 16 's requirement that "all penalties shall be proportioned to the offense" and its application in Supreme Court case law as a review for whether, under the circumstances, the duration of the imposed sentence "would shock the moral sense" of reasonable people of what is "right and proper." 343 Or. at 668, 175 P.3d 438. The court observed that, under its case law, a finding of disproportionality would occur "only in rare circumstances," and that a court looks to the "legislative enactment of the particular penalties at issue as an external source of law to assist in determining whether those penalties would shock the moral sense of reasonable people." Id. at 670-71, 175 P.3d 438.
The court further observed that its cases "underscore the legislature's authority to set enhanced penalties in response to recidivism," and noted its conclusion in State v. Smith , 128 Or. 515, 273 P. 323 (1929), that an "enhanced sentence (even a life sentence) is appropriate, and not disproportionate, when a defendant is 'an incorrigible criminal.' " 343 Or. at 672-73, 175 P.3d 438. It went on to discuss further application of that concern in other cases, noting that the legislature is permitted "to impose enhanced sentences on recidivists, even if those sentences would be disproportionate when applied to a defendant without prior convictions." Id . at 676-77, 175 P.3d 438. The court rejected the defendant's as-applied challenge to his true-life sentence, observing that sex crimes "may or may not result in permanent physical injury, but the legislature is entitled to presume that they are a serious matter in light of the potential for both physical and psychological *616 injury and that lengthy sentences are necessary to protect the public from further harm by recidivists." Id. at 679-80, 175 P.3d 438.
After Wheeler , the Supreme Court considered a nonrecidivism statute, ORS 137.700 (Ballot Measure 11), which requires a sentence of at least 75 months of imprisonment for a single conviction of first-degree sexual abuse. In Rodriguez/Buck , the court affirmed two trial court determinations that sentences imposed under the statute were constitutionally disproportionate and, reviewing its case law, identified three nonexclusive factors for assessing as-applied challenges under Article I, section 16 :
"(1) a comparison of the severity of the penalty and the gravity of the crime; (2) a comparison of the penalties imposed for other, related crimes; and (3) the criminal history of the defendant."
347 Or. at 58, 217 P.3d 659. The Supreme Court recognized the "central role" the legislature has in establishing penalties for crimes but underscored the "role of the court to ensure that sentences conform to requirements that have been in our constitution for 150 years." Id .
As regards the first factor, the court considered the relationship between the severity of the penalty urged by the state *103 and rejected by the trial courts-75 months incarceration-and the gravity of the offenses committed by the two defendants. Id . at 59, 67, 217 P.3d 659. The amount of time the offender must spend incarcerated for the conviction is the "primary determinant" of how severe the penalty is. Id . at 60, 217 P.3d 659. The offense, for purposes of an as-applied proportionality challenge, is not limited to the description of the prohibited conduct in the statute but includes consideration of the range of conduct prohibited by the statute as well as the circumstances of the defendant's specific offense, and then placing the defendant's conduct on the range of prohibited conduct. Id . at 69, 217 P.3d 659. The court noted:
"An as-applied proportionality analysis that considers the facts of an individual defendant's specific criminal conduct is particularly significant when the criminal statute at issue covers a broad range of activity, criminalizing a variety of forms and intensity of conduct. In such a case, a harsh penalty might not, on its face, be disproportionate, *617 because of the fact that the statute dealt, inter alia, with some extreme form of that conduct. However, when a defendant is convicted for engaging in only more minor conduct encompassed within the statute, the defendant may plausibly argue that the mandatory sentence, as applied to the particular facts of his or her case, is unconstitutionally disproportionate."
Id . When assessing the "range of activity,"
"a court may consider, among other things, the specific circumstances and facts of the defendant's conduct that come within the statutory definition of the offense, as well as other case-specific factors, such as characteristics of the defendant and the victim, the harm to the victim, and the relationship between the defendant and the victim."
Id . at 62, 217 P.3d 659. In applying that factor, the court concluded that the defendants' criminal conduct was "insufficiently grave to justify the mandatory six-year and three-month sentence" and "less severe than the conduct in the vast majority of (and probably in all) other reported first-degree sexual abuse cases since Measure 11 was passed." Id . at 74, 217 P.3d 659.
Under the second factor announced in Rodriguez/ Buck , the court compared the imposed penalty to penalties for related offenses. Id. at 63, 217 P.3d 659. That is, if "the penalties for more 'serious' crimes than the crime at issue result in less severe sentences, that is an indication that the challenged penalty may be disproportionate." Id . Applying that factor in Rodriguez/Buck , the court noted that the mandatory minimum sentence for the defendants' conduct-minimal sexual conduct with clothed children-was the same as the mandatory minimum sentence for second-degree sodomy, second-degree rape, and second-degree sexual penetration. Id. at 75, 217 P.3d 659. Reasonable people, the court concluded, would not believe that the defendants' sentences were proportionate to their offenses in light of the other, substantially more egregious conduct that was subject to the same mandatory minimum sentence. Id. at 75-76, 217 P.3d 659.
Under the third and final factor, the court considered the defendants' criminal histories, which are relevant "because a defendant who previously has been convicted of and served sentences for other crimes has demonstrated, by *618 committing additional crimes, that the previously imposed sentences were insufficient to prevent the defendant from returning to his or her criminal behavior." Id . at 77, 217 P.3d 659. "[T]he state has an interest in preventing repeat offenders from engaging in further crimes and * * * 'it does no violence to any constitutional [guarantee] for the state to rid itself of depravity when its efforts to reform have failed .' " Id . at 66, 217 P.3d 659 (quoting Smith , 128 Or. at 525, 273 P. 323 ) (emphasis in original) ). As for the defendants in Rodriguez/Buck , the court noted that the Measure 11 sentence imposed on them for their first-degree sexual abuse convictions applied even if they had "no prior criminal charges, arrests, or reported police contact." Id . at 77, 217 P.3d 659. "Traditional understandings of proportionality, as well as this court's cases, require us to consider whether a defendant is a repeat offender by considering previous criminal convictions and whether there is *104 evidence of multiple instances of uncharged wrongful conduct." Id . at 78, 217 P.3d 659. So considered, the court compared the defendants' lack of any history of sexual abuse to the "more common first-degree sexual abuse cases," in which the contact was not only far more physically invasive and sexually charged, but occurred multiple times or over several years (citing State v. Sullivan , 217 Or. App. 208, 174 P.3d 1095 (2007), and State v. Rhodes , 149 Or. App. 118, 941 P.2d 1072 (1997) ). Ultimately, the court concluded that the "absence of any criminal convictions and the single occurrence of the wrongful conduct support the conclusion that a 75-month sentence is unconstitutionally disproportionate to the offenses by these defendants." 347 Or. at 78, 217 P.3d 659.
In Althouse , the court revisited ORS 137.719(1), but having set out the Rodriguez/Buck factors, reworked the framework for applying those factors to a recidivism statute and affirmed the defendant's true-life sentence for felony public indecency. 359 Or. at 684, 375 P.3d 475. It observed that the constitutionality of a statute like ORS 137.719 that imposes an enhanced sentence because of a defendant's prior convictions necessarily requires that the defendant's criminal history be considered when assessing the severity of the penalty and the gravity of the crimes. Id . at 686, 375 P.3d 475. Thus, in such a case, the first and third Rodriguez/Buck factors (a comparison of the severity of the penalty and the gravity *619 of the crime, and examination of the defendant's criminal history) "overlap" when determining proportionality under a recidivism statute. Id. at 685, 375 P.3d 475. The court further concluded that an "inability to reform one's conduct despite repeated opportunities to do so * * * can justify the legislature's decision to impose" a true-life sentence. Id . at 687-88, 375 P.3d 475 (citing Tuel v. Gladden , 234 Or. 1, 7, 379 P.2d 553 (1963) ). The court noted that the defendant, "over a 30-year period," had "been convicted of sexual abuse and sodomy of his own and other people's children, as well as public indecency" and "many of the charged and uncharged instances in which defendant has engaged in public indecency during that 30-year period have been directed at or related to children [including his own five- and eight-year old children, and a nine-year-old boy]." Id . at 687, 375 P.3d 475. Accordingly, given that the defendant's criminal history "reflect[ed] a deeply ingrained pattern of predatory behavior" and "the seriousness of [the] defendant's repeated sexual misconduct and the danger that it forecasts for others," the court concluded that the defendant's true-life sentence did not violate the proportionality requirement of Article I, section 16. Id .
Two other court decisions bear mentioning. In Davidson , the court again decided the constitutionality of a sentence imposed under ORS 137.719(1), using the Althouse framework for the "consideration of as-applied challenges to sentences imposed pursuant to ORS 137.719." 360 Or. at 373, 380 P.3d 963. The convictions triggering ORS 137.719(1) were, like the ones in Althouse , for public indecency. Despite the fact that the defendant had "little control over his behavior or understanding of the socially unacceptable nature of his conduct," as well as a history indicating that he was "highly resistive to reform," in concluding that a sentence of life imprisonment without the possibility of parole was disproportionate under Article I, section 16, the court considered significant that the defendant's history of sexual offenses did not include physical contact with victims or specifically targeting victims. Id . at 385, 387, 380 P.3d 963.
Finally, in Ryan , the court returned to the constitutionality of a sentence imposed under ORS 137.700, to address the defendant's argument that the trial court failed *620 to properly account for his intellectual disability-an IQ score equivalent to the mental age of a 10 year old-in its analysis of the defendant's proportionality challenge to a 75-month sentence for a first-degree sexual abuse conviction. 361 Or. at 604-06, 396 P.3d 867. The court used ORS 161.290(1), which provides that a person tried as an adult is not criminally responsible for conduct occurring when the person was under 12 years of age, as "objective evidence of a societal standard that eschews treating persons with the attributes of a pre-teen child as if they were normally abled adult offenders." Id . at 624, 396 P.3d 867. The court therefore held that *105 "the trial court erred-in comparing the gravity of defendant's offense and the severity of the Measure 11 sentence under the first Rodriguez/ Buck factor-in failing to consider evidence of defendant's intellectual disability when that evidence, if credited, would establish that the sentence would be arguably unconstitutional because it shows that defendant's age-specific intellectual capacity fell below the minimum level of criminal responsibility for a child." Id . at 625-26, 396 P.3d 867.[5]
With that summary of the court's proportionality case law stated, we observe at the outset that the Supreme Court's case law has not addressed two critical issues presented in this case. First, the court has never addressed the constitutional proportionality of ORS 137.690 -facially or as applied.[6] ORS 137.690, unlike ORS 137.719(1), does not, at least in this case, operate as a recidivism statute. For that reason, we disagree with the dissent's approach, which depends heavily on the court's consideration of ORS 137.719(1) and other recidivism statutes. Likewise, for the same reason, we reject the state's assertion that the second *621 factor of Rodriguez/Buck -a comparison of the penalties imposed for related offenses-has little or no relevance in the disproportionality analysis in this case. Second, the court has never analyzed the significance of sentences imposed concurrently with the challenged sentences-that is, it has not examined the aggregate or "package" sentence imposed on a defendant, or a hypothetically imposed sentence, to assess a sentencing challenge under Article I, section 16.
We understand the dissent's approach to be based on an understanding of the trial court's sentencing determination in this case that is contradicted by the record of what the court actually considered. See 293 Or. App. at 677, 430 P.3d at 135 (Garrett, J., dissenting). A fair reading of the court's sentencing determination indicates that it was driven by the 300-month minimum imprisonment sentence required by the convictions at issue here, for using a child in a display of sexually explicit conduct. The state, in its sentencing recommendation, argued that defendant's "sentence is largely subject to the provisions of ORS 137.700 and ORS 137.690." Furthermore, the state sought to justify that minimum sentence by asserting that defendant's conduct requesting nude images by cell phone is much graver than we determine it to be, 293 Or. App. at 638, 430 P.3d at 114 (concluding that defendant's conduct "falls toward the less serious range of conduct" prohibited by ORS 163.670 and ORS 137.690 ). The trial court imposed the sentences in the way that it did within the context of the 25-year minimum sentence for the ORS 163.670 convictions.
The dissent's view presumes that, because the court could have permissibly imposed the same sentence by means of stringing together consecutive sentences on the array of crimes of conviction, or can permissibly do so on remand, that the court would have done the same or will do the same on remand, and consequently it reads our opinion as ignoring the realities of the sentence on review. 293 Or. App. at 688-89, 430 P.3d at 141-42 (Garrett, J., dissenting). Here, the dissent's position considers an alternative scenario in which the arguments to the court would have been, or will be, entirely different. Put differently, had the minimum sentence under ORS 137.690 been a 15-year or a 20-year minimum term of imprisonment, the court may have very well imposed a 15-year or *622 20-year total sentence, *106 or a sentence closer to the 10-year sentence originally proposed by the state and acceptable to the victims during plea negotiations. We cannot tell from this record that the court determined that, had it considered all of defendant's convictions, it would have arrived at the "package" it did despite the 25-year required minimum. Moreover, we cannot anticipate with the certainty asserted by the dissent what, on remand, the state will recommend, what arguments or mitigating evidence defendant will present to the court, or what the court will deem appropriate within its permissible discretion allowed under the law. In our view, because the case law has invariably remained concentrated on analyzing the constitutionality of individual sentences, we agree with the state's express position on appeal that the "proper focus for purposes of a proportionality analysis is on each individual crime that the defendant committed and on the corresponding sentence imposed for that crime." (Emphasis in the state's brief.)
Thus, we reject the approach advanced by the dissent that the proportionality analysis in this case must necessarily consider defendant's "total" or "package" sentence. That is because the Supreme Court's proportionality analysis under Article I, section 16, has been, for good reason, in every case, an analysis of the individual sentence challenged by a defendant. Article I, section 16, mandates that "all penalties shall be proportioned to the offense ." (Emphasis added.) Thus, in Article I, section 16, challenges on either a facial or as-applied basis, the court has resolved the constitutionality of the statutorily-prescribed sentence. Given that we must look "to the legislative enactment of the particular penalties at issue as an external source of law to assist in determining whether those penalties would shock the moral sense of reasonable people," how could it be otherwise? That is, fundamental to the proportionality analysis is a probing of the legislative justification for a statutorily prescribed sentence.
The dissent drastically departs from that approach when it says that defendant's "total" sentence is the appropriate sentence to gauge its effect on the moral sense of reasonable people. That approach focuses on the sentencing court's discretion-in this case, the sentencing court's *623 hypothetical exercise of discretion-rather than on the legislative justification for the imposition of 25 years of prison for the violations of ORS 163.670 that triggered ORS 137.690. See 293 Or. App. at 688-89, 430 P.3d at 141-42 (Garrett, J., dissenting). We also conclude that when ORS 137.690 and its intent are properly considered, the framework supplied by Rodriguez/Buck is adequate to analyze the constitutional proportionality of defendant's challenged 25-year prison sentences. We proceed to explain further that conclusion.
First, the Supreme Court considers ORS 137.719 a recidivism statute: A true-life sentence is triggered under ORS 137.719"if the defendant has been sentenced for sex crimes that are felonies at least two times prior to the current sentence," and, consequently, the court has described it as a "recidivism statute for felony sex offenders." Wheeler , 343 Or. at 654, 175 P.3d 438 ; see id . at 678, 175 P.3d 438 (" ORS 137.719(1) is a recidivism statute that applies to defendant only because he has two prior felony convictions for sex crimes.").[7] That purpose of ORS 137.719(1) acutely informs the reasoning of the court's jurisprudence, which is that relatively innocuous conduct may merit a true-life prison sentence if the defendant has been proven incorrigible and thus constitutes a threat to the public. See Wheeler , 343 Or. at 676-77, 175 P.3d 438 (the legislature is permitted "to impose enhanced sentences on recidivists even if those sentences would be disproportionate when applied to a defendant without prior convictions"); Althouse , 359 Or. at 687, 375 P.3d 475 ("[D]efendant, over a 30-year period, has been convicted of sexual abuse and sodomy of his own and other *107 people's children, as well as public indecency.").[8] *624 In contrast, ORS 137.690 has a different aim. Whereas ORS 137.719 concerns the recidivist's third conviction for any sex crime (as included in ORS 163A.005, see ORS 137.719(4) ), ORS 137.690 concerns the imposition of a 25-year sentence for persons who have been convicted of the gravest sex crimes more than once. That is, it applies to "major felony sex crimes"-first-degree rape, sodomy and sexual penetration (sex crimes inflicted by forcible compulsion or upon victims younger than 12) and using a child in a display of sexually explicit conduct-and does not require any conviction prior to the current sentencing to be triggered. ORS 137.690 applies when a defendant has more than one major felony sex crime conviction, but yet allows a previous conviction to be the predicate conviction even if it is imposed in the same sentencing proceeding. ORS 137.690 (" 'Previous conviction' includes a conviction for the statutory counterpart of a major felony sex crime in any jurisdiction, and includes a conviction in the same sentencing proceeding if the conviction is for a separate criminal episode as defined in ORS 131.505.").
Because the statute allows the "previous" major felony sex crime conviction to be sentenced in the same proceeding, it is less concerned with the goal of protecting the public from recidivist sex criminals, and more concerned with the protection of the public from those persons who have committed the very worst sex crimes more than once. See Multnomah County Ballot Guide 76, November 2010 ("These are the worst of the sexual predators. We need to keep them behind bars to protect the public."). Indeed, the arguments in favor of Measure 73 in the Voters' Pamphlet nowhere evince an intent to address the problem of recidivism of violent sex offenders. See Multnomah County Ballot Guide 76 (arguments in favor of the measure explaining that it is meant to "protect its citizens from harm" and "provide justice to victims of crime" by incarcerating the "worst of * * * repeat," but not recidivist, offenders). Rather, ORS 137.690 appears to be justified by a belief that the second-time offender of a "major felony sex crime," i.e. , *625 the most heinous violent sex crimes, requires punishment in excess of what is available under Measure 11. That is, ORS 137.690 imposes an enhanced sentence on persons who commit a second-time first-degree rape, sodomy, and unlawful sexual penetration (generally, penetration or sexual contact by forcible compulsion or of a child 11 years old or younger) or use a child in a display of sexually explicit conduct (generally understood as creating child pornography or live sex shows), persons who were described in the Voters' Pamphlet as the "worst repeat violent sex offenders." See Multnomah County Ballot Guide 76.
As a result, we view with skepticism the dissent's view that the Supreme Court's case law compels an approach that reduces the proportionality analysis in this case to "a broadly contextual one in which the characteristics of the defendant and his conduct, not just the narrow underlying offense, matter," 293 Or. App. at 685, 430 P.3d at 140 (Garrett, J., dissenting), and that, consequently, includes all of the criminal conduct for which defendant was sentenced in the same sentencing proceeding, even if none of the conduct, as we explain below, constitutes the most heinous of sexual crimes. To begin with, the dissent's "contextual" approach amplifies the characteristics of defendant and his overall conduct while it ignores other contextual factors identified in Rodriguez/Buck . That is, in Rodriguez/Buck , the Supreme Court instructed that courts may also consider "case-specific factors, such as characteristics of the defendant and the victim, *108 the harm to the victim, and the relationship between the defendant and the victim. " 347 Or. at 62, 217 P.3d 659 (emphasis added). When those other factors are considered, as we do below, 293 Or. App. at 641-42, 430 P.3d at 116 (considering that defendant was in his late-adolescence, that defendant and the sexting victims were in the same peer group, and that defendant's lack of previous convictions of any kind or other evidence does not indicate incorrigibility), the first factor in the Rodriguez/Buck test is fairly applied.
Moreover, the justification the court has developed in facial and as-applied challenges under ORS 137.719(1) in Wheeler and Althouse depends on the principle that the legislature is entitled to provide enhanced sentences when a defendant has been proven highly resistant to reform *626 because the person has reoffended after the state has previously punished him or her. The court's analysis under that statute-and other recidivist statutes-has focused on that justification, and we cannot discern a reason for the application of that justification to the statute at issue here. Likewise, we reject the state's position that ORS 137.690 is "analogous" to ORS 137.719 and that, therefore, because of defendant's multiple convictions, the second Rodriguez/Buck factor (comparison of penalties imposed for other related crimes) has little relevance to the proportionality analysis.
Because ORS 137.690 does not operate as a recidivist statute in this case-given that defendant's convictions were imposed under the same sentencing proceeding and he had been neither convicted nor sanctioned for any criminal offenses before that sentencing proceeding-we apply the test set out in Rodriguez/Buck . Nevertheless, when considering the gravity of the offense compared to the severity of the penalty, we necessarily recognize that the 25-year sentences imposed under ORS 137.690 in this case were for multiple offenses involving using a child in a display of sexually explicit conduct. Engaging in that properly-framed review, we conclude, as explained below, that the actual conduct in which defendant engaged falls short-far short-of conduct that could be considered by a reasonable person to be the most reprehensible of sex crimes, which is the legislative justification for the sentences he received.
II. DEFENDANT'S CONDUCT
Because the jury found defendant guilty of the relevant charges, we view the evidence presented at trial in the light most favorable to the state. Davidson , 360 Or. at 373, 380 P.3d 963.
The crimes forming the basis of defendant's convictions occurred during a period beginning when defendant was 16 and ending when he was 18, when he pursued, often successfully, sexual activity with eight girls who were between two and four years younger than he was. The investigation of defendant began on November 7, 2012, when the mother of 13-year-old CB discovered and reported to police a text message thread on a cell phone involving discussions of sexual activity between defendant and CB, which included defendant telling CB that he loved her and asking her to perform *627 oral sex on him as well as asking for "pictures." CB testified at trial that she was "pretty sure" that she had sent pictures of herself holding her naked breasts because defendant had asked her to. CB's mother believed that defendant had sexually penetrated CB; CB provided inconsistent accounts to investigators of the sexual contact between her and defendant. For his conduct with CB, defendant was convicted of inducing a child to engage in a display of sexually explicit conduct and first-degree sexual abuse.[9] For the first-degree sexual abuse conviction, defendant received a 70-month sentence and, for the child-display conviction, he received a 75-month sentence as required by ORS 137.700 (Ballot Measure 11), which serves as the predicate conviction for the remaining 10 child-display convictions for which defendant was sentenced under ORS 137.690 (Ballot Measure 73). *109 In May 2013, 16-year-old PG reported a domestic violence incident involving defendant, who was then 18 years old. At the time, PG shared an apartment with defendant and their two-month-old son. PG and defendant were arguing about finances, and PG was angry because she had discovered on defendant's cell phone nude pictures of other girls. The argument escalated, and defendant pushed PG down about 10 times and, at one point, held her down and punched her in the head. PG testified that when she was 15 or 16, she took nude photos-of her breasts and vagina, and of herself masturbating-and sent them to defendant. According to PG, defendant never asked for the pictures-she sent them unsolicited-but he did "express that he liked" them. At trial, PG testified that she still loved defendant and that she was unhappy that he was being prosecuted and that she had been called to testify against him. Concerning defendant's conduct as to PG, defendant was convicted of using a child in a display of sexually explicit conduct, ORS 163.670 ; fourth-degree assault constituting domestic violence; and second-degree encouraging child abuse.[10] For the child-display conviction, he received a 25-year sentence; for the fourth-degree assault conviction, a 25-month sentence; *628 and, for second-degree encouraging child abuse, a 15-month sentence.
During the course of the domestic violence investigation concerning PG, police obtained a warrant to search and analyze defendant's cell phone. Upon doing so, they discovered images of naked breasts and partially clothed girls that had been sent to defendant by PG and six other girls. Police used the information associated with the images to contact the victims.
Defendant began sexually penetrating BB and subjecting her to other sexual activity when she was 14. He also asked that she send him pictures of her breasts and buttocks, and complimented her when she did. For his conduct with BB, he was convicted of two counts of using a child in a display of sexually explicit conduct, ORS 163.670, and third-degree rape and sodomy, ORS 163.355, ORS 163.385. Defendant received a 25-year sentence for each child-display conviction and 25-month sentences for the third-degree rape and sodomy convictions.
LA was 14 and 15 years old when she sent defendant nude pictures of herself, sometimes because he asked for them and sometimes spontaneously. He did not pressure her, but encouraged and complimented her when she did so. Defendant was not specific about the kinds of pictures he had in mind, except that one time he specifically asked for nude pictures. KH was 14 years old when she took a top-less picture of herself and text messaged it to defendant, after he had asked her to do so. DM was about two years younger than defendant when he asked for, and DM sent, a picture in which her breasts and her vagina were exposed. Defendant responded to the picture by asking for more. PH was 15 when she sent nude and clothed pictures of herself to defendant via text. She sent the "sexually suggestive" pictures sometimes because defendant requested them and sometimes without him asking so that she could "get his attention." For his conduct with these victims, with whom defendant was not charged with having had physical sexual contact, defendant was convicted of seven counts of using a child in a display of sexually explicit conduct; for each conviction he received a 25-year sentence under ORS 137.690.
*629 The pictures that JB sent to defendant were not of nudes, but when police contacted her, she stated that defendant had sexually penetrated her beginning when she was 12 years old and continuing until she was 14. For that conduct, defendant was convicted of two counts of second-degree unlawful sexual penetration, ORS 163.408, for which he received Measure 11 sentences of 75 months each.[11]
The state recommended to the sentencing court that defendant serve a total of 25 years imprisonment. Defendant argued that the state's recommended 25-year sentence for 10 *110 of the ORS 163.670 convictions was constitutionally disproportionate under Rodriguez/Buck .[12] The court agreed to sentence defendant according to the state's recommendation, finding significant that there was not one specific incident but a "huge totality of circumstances that included taking pictures and then acting upon them and using the self-esteem of these victims and crashing their self-esteem and using the sex acts in addition." What struck the court as significant was that the eight victims were "particularly vulnerable" and "desperate" for defendant's "attention, approval, and love" and that is why they sent him images of themselves and allowed defendant to subject them to sexual acts. The sentencing court appears not to have engaged with the constitutional proportionality of the 25-year sentences for the child-display convictions, stating that it was "going to leave a lot of those legal arguments to a higher court to determine."
In sum, defendant was convicted of 11 counts of using a child in a display of sexually explicit conduct; one count of first-degree sexual abuse; one count of fourth-degree assault constituting domestic violence; one count of second-degree child abuse; one count of third-degree rape; one count of third-degree sodomy; and two counts of second-degree sexual penetration. Because the sentencing court ordered that all of the sentences be served concurrently, defendant was sentenced to a total of 25 years in prison.
*630 III. CONSIDERATION OF RODRIGUEZ/BUCK FACTORS
A. The Penalty and the Offense
Under Rodriguez/Buck , we first compare the severity of the penalty to the gravity of the offense. Although the 25-year sentences in these cases are not as severe as the true-life sentences imposed on the defendant in Althouse (and those held constitutionally disproportionate in Davidson ), they are four times as long as the 75-month sentences held by the Supreme Court to be constitutionally disproportionate for the conduct constituting first-degree sexual abuse in Rodriguez/Buck . The 25-year sentence is also equivalent to the sentence imposed for murder. See ORS 137.700 (providing for 300 months (25 years) of imprisonment for murder under ORS 163.115 (intentionally committing criminal homicide) ).A 25-year imprisonment sentence is an extremely severe penalty . We proceed to compare that penalty to the gravity of the offense, recognizing that the challenged penalties arise not just from a single offense of using a child in a display of sexually explicit conduct but from 11 convictions and also from the fact that defendant was convicted of other offenses in the same sentencing proceeding. In making the comparison, we look at the range of conduct prohibited by ORS 163.670 and consider defendant's specific conduct-using case-specific factors such as characteristics of defendant and the victims, the relationship between defendant and the victims, and the harm to the victims-to determine where on the range of prohibited conduct defendant's conduct falls. Rodriguez/Buck , 347 Or. at 62, 69, 217 P.3d 659.
ORS 163.670 prohibits using a child in a display of sexually explicit conduct, which occurs "if the person employs, authorizes, permits, compels or induces a child to participate or engage in sexually explicit conduct for any person to observe or to record in a visual recording." We have characterized ORS 163.670 as describing the most serious of a group of related offenses that concern the visual recording and observation of children engaged in sexually explicit conduct that also include encouraging child sexual abuse, ORS 163.684 ; ORS 163.686 ; ORS 163.687, possession *631 of materials, ORS 163.688 ; ORS 163.689, and failure to report child pornography, ORS 163.693. State v. Porter , 241 Or. App. 26, 33, 249 P.3d 139, rev. den. , 350 Or. 530, 257 P.3d 1020 (2011). It "proscribes live presentations of sexually explicit conduct involving a child as well as the creation of visual recordings of sexually explicit conduct involving a child," id. at 33-34, 249 P.3d 139 (contrasting ORS 163.670 to less *111 serious child pornography offenses that do not involve directly the creation of child pornography), and is intended to prevent " 'the underlying harm caused by child sexual abuse,' " id . at 32-33, 249 P.3d 139 (quoting State v. Stoneman , 323 Or. 536, 547, 920 P.2d 535 (1996) ).
ORS 163.670 proscribes a particularly broad range of conduct. See Rodriguez/Buck , 347 Or. at 61, 217 P.3d 659 (in an as-applied proportionality analysis, an "individual defendant's specific criminal conduct is particularly significant when the criminal statute at issue covers a broad range of activity, criminalizing a variety of forms and intensity of conduct"). In addition to the various activities that constitute "using" a child (a person can employ, authorize, permit, compel, or induce a child to participate or engage in sexually explicit conduct) and the age range of a "child"[13] from prepubescent children to adolescents one day short of 18 years of age, the defined term "sexually explicit conduct" encompasses a wide range of conduct as defined by ORS 163.665(3) : sexual intercourse or deviant sexual intercourse, genital-genital, oral-genital, anal-genital contact, oral-anal contact between humans or between humans and animals, penetration of the vagina or rectum by an object (other than as part of medical treatment or for personal hygiene practices), masturbation, sadistic or masochistic abuse, or lewd exhibition of sexual or other intimate parts. The gravest conduct that constitutes displaying a child in sexually explicit conduct is the visual recording or the live presentation of a child engaged in sexual acts. See, e.g. , *632 State v. Ciancanelli , 339 Or. 282, 286, 121 P.3d 613 (2005) (the proprietor of a business used a child in a display of sexually explicit conduct by featuring a live show that consisted of a performer under 18 years of age who performed a striptease, rubbed her breasts against undercover officers' chests, and engaged with oral sex with another dancer); State v. Ross , 199 Or. App. 1, 3, 110 P.3d 630, adh'd to as modified on recons. , 200 Or. App. 143, 113 P.3d 921 (2005), rev. den. , 340 Or. 157, 130 P.3d 786 (2006) (involving a father observing the group sex of his three children, ages 9-12); Porter , 241 Or. App. at 28, 249 P.3d 139 (the defendant allowed various members of the household-the defendant, his wife, and two male roommates-to observe his 15-year-old stepdaughter posing and remaining in sexual positions in common areas of the house).[14]
Further, defendant's challenged sentences do not derive solely from convictions in violation of ORS 163.670, but because those convictions constitute, under ORS 137.690, "major felony sex crime[s]" penalized by a mandatory imprisonment term of 25 years, we consider the crimes triggering the application of ORS 137.690. In addition to ORS 163.670, a "major felony sex crime" for purposes of ORS 137.690 includes first-degree rape, ORS 163.375, first-degree sodomy, ORS 163.405, and first-degree sexual penetration, ORS 163.411. Thus, ORS 137.690 is triggered by a range of criminal conduct, as serious as sexual penetration and deviate sexual intercourse (defined as "sexual conduct consisting of contact between the sex organs of one person and the mouth or anus of another," ORS 163.305(1) ) by means of forcible compulsion or with a child under the age of 12, and as minor as the crime at issue here.
The state posits that when voters approved ORS 137.690 in November 2010 by Ballot Measure 73, they intended the measure to encompass defendant's conduct. That is, in the state's view, because the Voters' Pamphlet *112 included statements made in opposition to the measure *633 asserting that it would encompass "sexually suggestive images by text message or email," Multnomah County Ballot Guide 78, November 2010, the voters' intent can be discerned and can therefore assist in the determination of whether the "penalties would shock the moral sense of reasonable people." Wheeler , 343 Or. at 670-71, 175 P.3d 438. The state argues that "voters rationally could have concluded that anyone, such as defendant, who has committed the crime of unlawful use of a minor in a display of sexually explicit conduct on multiple occasions, poses special risks of harm to minors and to the public, such that a 25-year prison term is warranted."
The state is correct that, among the nine pages of text describing the measure and the arguments in favor (one page) and the arguments opposed (4 pages), opposition to the measure identified sending sexually explicit texts as falling under the definition of using a child in a sexually explicit display. It is also true, however, that the argument in favor of Measure 73 was that the measure was meant to send the "worst of the sexual predators" to prison for at least 25 years, i.e. , put "the worst violent sex offenders behind bars for a long time." Multnomah County Ballot Guide 76, November 2010. None of the arguments in favor of Measure 73 addressed in particular the conduct of teenagers who request or send sexually suggestive images, much less described those who do so as the "worst of the sexual predators" or asserted that the measure was needed to address the issue. See 293 Or. App. at 668-69, 430 P.3d at 130-31 (James, J., concurring). Moreover, in response to concerns that teenage sexting would be swept up by the measure, the proponents of Measure 73 emphatically asserted that district attorneys would not charge teenaged sexting under Measure 73. Id . at 670-71, 430 P.3d at 131-33 (James, J., concurring).
As the concurring opinion sets out, it is apparent that the voters never intended Measure 73 to include defendant's conduct. 293 Or. App. at 672-73, 430 P.3d at 133-34 (James, J., concurring) (" ORS 137.690, passed by the voters as part of Measure 73, was designed and marketed to the voting public as a measure targeting a group of offenders described as 'the worst,' 'predators,' 'violent,' 'serial rapists,' and 'serial child *634 pornographers.' Proponents of the measure estimated it would affect a very small group, '15 to 20, * * * a very small group of the worst sex offenders.' ").[15]
As to the seriousness of the conduct here, we first note that the conduct that defendant and his victims engaged in is common among teenagers. Indeed, requesting and sending sexually explicit self-portraits via a camera phone is a common enough behavior to have engendered the term "sexting." See Merriam-Webster Unabridged Dictionary , https://www.merriam-webster.com/dictionary/sexting (accessed Aug. 30, 2018) ("the sending of sexually explicit messages or images by cell phone"); 293 Or. App. at 649-51, 430 P.3d at 120-22 (James, J., concurring) (explaining that a sext is self-created by the person appearing in the image sent by a camera phone and is voluntarily sent). And, like other consensual sexual activities in which adults engage, so do teens.[16] Recognizing *113 its frequency is *635 not meant to trivialize its harm, but to acknowledge that requesting and sending to another teenager nude photos that are self-produced is commonly viewed among teenagers as a form of voluntary sexual activity rather than what one would typically understand as child pornography.
Although we recognize the harm, or potential harm, suffered by the victims, we cannot ignore three salient facts concerning defendant's conduct in relation to other conduct that is proscribed by ORS 163.670, and in light of defendant's relationship to the victims, the characteristics of the victims and defendant, and the harm to the victims. Rodriguez/ Buck , 347 Or. at 62, 217 P.3d 659. As we explain, those facts considered in combination support a conclusion that the underlying harm of defendant's actions was relatively minor when compared to the underlying harm inherent in typical instances of using a child in a display of sexually explicit conduct. See Porter , 241 Or. App. at 33, 249 P.3d 139 (purposes "of ORS 103.665 through 163.693 is to prevent the underlying harm caused by child sexual abuse") (quoting Stoneman , 323 Or. at 547, 920 P.2d 535 ).
First , defendant "induced" the victims to participate in creating the images by simply asking for or encouraging them. Defendant did not threaten or force the victims to take nude self-portraits and send them to him. Whereas inducing, permitting, or compelling a child to participate in what one typically would view as the display of a child in sexually explicit conduct or child pornography ordinarily requires more exploitative behavior or abuse to achieve what is obviously an abhorrent act, defendant's requests were facilitated by a common practice among teenagers. To "induce" is commonly understood to mean to persuade or influence. See Webster's Third New Int'l Dictionary 1154 (unabridged ed. 2002) (induce defined as "to move and lead (as by persuasion or influence) * * * prevail upon : INFLUENCE, PERSUADE"). Among the ways one can persuade another person to send a nude image, defendant's requests or compliments were relatively nonaggressive.
Second , the images, limited to nude self-portraits, were self-created and sent by the victims. Defendant neither was physically present when the victims made the nude self-portraits nor was he there to direct them to engage in *636 poses or sexual behavior while he recorded them. That is in contrast to much of the conduct that is associated with the production of child pornography that necessarily implicates the sexual abuse of children. See generally Stoneman , 323 Or. at 546, 546 n. 12, 920 P.2d 535 (in the determining constitutionality of former ORS 163.680 (1987), repealed by Or. Laws 1995, ch. 768, § 16 (paying for child pornography), noting that the production of visual recordings of children participating in sexually explicit conduct "necessarily involves harm to children," citing various crimes that subject children to sexual contact ); see also Ashcroft v. Free Speech Coalition , 535 U.S. 234, 241-42, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002) (holding that the constitutional protections recognized in Miller v. California , 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), apply to a virtual pornography statute because child pornography that does not depict an actual child is not the product of child abuse); New York v. Ferber , 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982) (distinguishing child pornography from other sexually explicit speech constitutionally protected under Miller , because of the state's interest in protecting children exploited by the production process).
Third , defendant, a teenager himself and under 18 years of age during some of the *114 conduct, was only two to four years older than the victims. We do not mean to suggest that the age differences between defendant and the victims played no role in the degree to which his conduct was harmful or exploitive; some of the conduct, such as the predicate conviction involving CB, is of particular concern. Nevertheless, the age differences here are distinguishable from cases involving older adults who request nude images from children. See State v. Hunt , 270 Or. App. 206, 207-08, 346 P.3d 1285 (2015) (defendant, 25 years old, violated ORS 163.670 by asking by text message the 13-year-old victim to send him a "naughty" picture); see also 293 Or. App. at 638, 430 P.3d at 114 (discussing a defense to sexual crimes when the defendant is less than three years older than the victim). Further, the victims were not prepubescent children. See Ross , 199 Or. App. at 3, 110 P.3d 630 (involving victims who were ages nine to 12 ( ORS 163.670 ) ).
ORS 137.690 imposes the same punishment for the conduct at issue in this case as for a second offense of rape *637 by forcible compulsion, regardless of the age of the victim, or a second offense of sexual intercourse with a nine-year-old victim. Reasonable people would view the former conduct as much less severe and harmful to the victims than the latter criminal acts. We share the state's concern that defendant's conduct was not "innocuous" and that there was significant harm to the victims because they were young and "particularly vulnerable." It is clear that many of the victims felt that they were harmed to various degrees[17] and that defendant's actions created the risk of long-lasting harm to the victims because he retained the images on his phone, viewed them for his own sexual gratification, and could have shared them at any time.[18] That is not, however, the relevant inquiry. An as-applied challenge to a sentence as disproportionate under Article I, section 16, is a challenge that the offense is not proportionate to the penalty, here, 25 years. That is, the offense and the penalty must "bear a sufficient relationship" to each other. Rodriguez/Buck , 347 Or. at 59, 217 P.3d 659. The state, here, fails to explain how the penalty is proportionate in light of other, significantly more severe conduct that also falls under ORS 163.670 and ORS 137.690.
As noted, the court in Rodriguez/Buck stated that "when the criminal statute at issue covers a broad range of activity, criminalizing a variety of forms and intensity of conduct," an "as-applied proportionality analysis that considers the facts of an individual defendant's specific *638 criminal conduct is particularly significant." 347 Or. at 61, 217 P.3d 659. Here, to be sure, perhaps the most innocuous conduct that would implicate ORS 163.670 and ORS 137.690 would be a 17-year-old who twice asks for and receives from another 17-year-old nude images by cell phone (or in person- ORS 163.670 prohibits inducing the live observation of a child's sexual or other intimate parts). We recognize that defendant's conduct does not fall at that very outer edge of prohibited contact. Nevertheless, when compared to other conduct prohibited by ORS 163.670 or that triggers ORS 137.690, defendant's conduct falls toward the less serious range of conduct implicated here.
B. The Penalties for Related Offenses
We next turn to comparing the penalty at issue-25-year sentences-to the penalties *115 for other related crimes. "If the penalties for more 'serious' crimes than the crime at issue result in less severe sentences, that is an indication that the challenged penalty may be disproportionate." Rodriguez/Buck , 347 Or. at 63, 217 P.3d 659. For this factor, defendant groups the victims into two categories: (1) those who were 14, 15, and 16 years old and were less than three years younger than defendant when he committed the offenses (PG, KH, DM, and PH) and (2) those who were 14 years old and more than three years younger than defendant (BB and LA). For the first group, ORS 163.345 provides a defense to second-and third-degree rape, second- and third-degree sodomy, first- through third-degree sexual abuse; and contributing to a minor's sexual delinquency if the victim's incapacity to consent is solely because they are younger than a certain age.[19] For example, second-degree rape is committed when a *639 person sexually penetrates another person who is under 14 years of age, but a defense to prosecution is available if, for example, the accused is less than three years older than the underage person. For the second group, defendant points out that he was convicted of third-degree rape and sodomy for engaging in sexual intercourse and oral sex with BB because of her legal incapacity to consent as someone under the age of 16, and that he was sentenced to 25 months imprisonment for each of those crimes, which are neither Measure 11 crimes nor considered "major felony sex crimes" for the purpose of Measure 73. Hence, the 25-year imprisonment penalties he received for soliciting a nude picture more than once were significantly greater-12-fold-than the penalty for those convictions involving physical sexual offenses, or possible similar convictions.
For its part, the state concedes that age-related sex offenses are related to the child-display convictions, but contends that such a comparison is not helpful or significant in instances when the criminal conduct being sentenced is not "innocuous" or when there are multiple victims and crimes. We reject that argument. The crimes in both Rodriguez/ Buck and Davidson were decidedly not "innocuous." In Rodriguez/Buck , the court was careful to clarify that it did not mean to suggest that the "defendants' conduct caused no harm to their victims," recognizing that sexual abuse potentially causes psychological and physical harm. 347 Or. at 70 n. 14, 217 P.3d 659. In Davidson , the court likewise recognized that the defendant's repeated instances of public masturbation "will continue to cause upset and possible harm to people who observe him exposing himself and masturbating." 360 Or. at 385, 380 P.3d 963. As to the multiple instances of the conduct, we see nothing in the court's analysis in Rodriguez/Buck that suggests that we should address that apart from considering defendant's criminal history.
With that in mind, as for the first group of victims-those who were less than three years younger than *640 defendant-the penalty imposed for soliciting nude images by cell phone readily raises proportionality concerns. As we discussed above, the conduct of asking the victims to send pictures of themselves naked-to "sext" him-is toward the "outer edge," see Rodriguez/Buck , 347 Or. at 75, 217 P.3d 659, of what constitutes using a child in a display of sexually explicit conduct. We cannot conclude that such conduct warrants such a grave penalty when actual physical contact between defendant and the victims would not be prosecutable. As for the second group of victims, we similarly cannot *116 conclude that the harm of defendant's conduct in requesting sexually explicit images is of a magnitude so much greater than the harm of engaging in physical sexual activity that it deserves sentences far greater than could be imposed for rape and sodomy by reason of the victims' incapacity to consent. The comparisons here indicate that the Measure 73 sentences imposed on defendant are disproportionate to his conduct.
C. Criminal History
The third Rodriguez/Buck factor is an assessment of defendant's criminal history. The parties dispute how defendant's multiple victims and multiple convictions should be considered for the purpose of assessing proportionality. The state posits that defendant qualifies as a "repeat offender" and that we should consider all of defendant's convictions-and also the conduct for which he was found not guilty-as part of the criminal history factor. See Rodriguez/Buck , 347 Or. at 78, 217 P.3d 659 (proportionality requires consideration of "whether a defendant is a repeat offender by considering previous criminal convictions and whether there is evidence of multiple instances of uncharged conduct"). Because defendant did more than victimize a single victim on a single occasion, the challenged sentences do not, in the state's view, shock the moral sense of reasonable people.
Defendant asserts that a repeat offender for proportionality purposes is an offender who has reoffended after having been previously convicted and served a sentence. In his view, the Supreme Court has made clear that the state has a constitutionally permissible interest in imposing sentences "to rid itself of depravity when its efforts to reform have failed." Smith , 128 Or. at 525, 273 P. 323 ; see also *641 Rodriguez/Buck , 347 Or. at 77, 217 P.3d 659 (the criminal history "inquiry is relevant * * * because a defendant who previously has been convicted of and served sentences for other crimes has demonstrated, by committing additional crimes, that the previously imposed sentences were insufficient to prevent the defendant from returning to his or her criminal behavior"); Jensen v. Gladden , 231 Or. 141, 145, 372 P.2d 183 (1962) (the defendant's indeterminate life sentence for an indecent exposure conviction after having first served a sentence for contributing to the delinquency of a minor was proportional: Whether a sentence would shock the moral sense of a reasonable person depends "upon the seriousness of repetitive sexual conduct of this kind and the danger that it forecasts for others unless the defendant is segregated from society").
To begin with, we cannot ignore that, in addition to the 11 convictions for using a child in a display of sexually explicit conduct, defendant was convicted of other felony sex crimes. The harm and victimization defendant left in his wake was broad and serious. Defendant's rampant sexual misconduct is far from the isolated conduct exhibited by the defendants in Rodriguez/Buck and which supported the Supreme Court's conclusion that their 75-month sentences were not permissible under Article I, section 16. Accordingly, we agree with the state that, in contrast to the circumstances of Rodriguez/Buck , defendant's extensive conduct obviates the conclusion that his conduct was isolated. Compare Rodriguez/Buck , 347 Or. at 78, 217 P.3d 659 (concluding that "the absence of any criminal convictions and the single occurrence of the wrongful conduct support the conclusion that a 75-month sentence is unconstitutionally disproportionate to the offenses committed by these defendants").
Nevertheless, central to the Supreme Court's formulation of the criminal history factor in Rodriguez/Buck is the state's interest in imposing lengthy sentences to protect the public in light of circumstances when efforts to reform have failed. See 293 Or. App. at 617-18, 430 P.3d at 103-04. The extent of defendant's conduct is different from the defendant's conduct in Althouse . There, the Supreme Court concluded that the defendant's criminal history-30 years of sexual offenses and multiple previous convictions-supported the *642 conclusion that his true-life imprisonment sentence was not constitutionally disproportionate. Here, defendant's conduct occurred over a relatively shorter period of time, and defendant had no criminal history or encounters with the police *117 prior to the investigation of this case. Moreover, the record lacks any indication that defendant-who was only 16, 17 and 18 when he committed the offenses against other teenagers-is incorrigible or that attempts to reform would fail. Cf. Althouse , 359 Or. at 682, 375 P.3d 475 (the defendant was determined by Oregon State Hospital staff to be a "sexually dangerous person"). That is, the record does not indicate that defendant's conduct-occurring during his mid- to late-adolescence-reflects the "deeply ingrained pattern of predatory behavior," Id. at 687, 375 P.3d 475 (emphasis added), which justified the enhanced sentences in this case. Defendant's young age[20] and his age relative to the victims, the relatively short period during which his offenses occurred, and the lack of any unsuccessful attempt at rehabilitation support a conclusion that his 25-year sentences are constitutionally disproportionate. Indeed, the state's presentence investigation-in addition to noting the lack of any criminal history and that defendant had "never been involved with the Criminal Justice System"-fails to point to any criminal risk factor that would support the challenged 25-year prison sentences.
Although the dissent is correct that the "heart of the proportionality inquiry under Article I, section 16, is *643 'whether the length of the sentence would shock the moral sense of reasonable people,' " 293 Or. App. at 642-43, 430 P.3d at 117 (Garrett, J., dissenting) (quoting Ryan , 361 Or. at 612, 396 P.3d 867 ), it incorrectly applies that analysis to the totality of defendant's conduct rather than to the sentences imposed for the sexting offenses. Those are the sentences to which defendant assigns error and, under the framework provided to us by the Supreme Court, those are the sentences that we have determined are constitutionally disproportionate. The Supreme Court has never indicated that the proportionality analysis must focus on the propriety of all of the defendant's sentences taken together in one sentencing proceeding, on whether the trial court could have arrived at the same, or greater, "package" by a different route, or on whether, on remand, it could permissibly arrive at the same, or greater, "package." Rather, Article I, section 16, requires that "all penalties shall be proportioned to the offense," and, in an as-applied challenge, the Supreme Court has required "a comparison of the severity of the penalty and the gravity of the crime." Rodriguez/ Buck , 347 Or. at 58, 217 P.3d 659.
IV. CONCLUSION
In light of the factors set out by the Supreme Court in Rodriguez/Buck , the 25-year sentences imposed under ORS 137.690 are disproportionate under Article I, section 16, as applied to defendant. There are likely other circumstances where imposing such a sentence for multiple convictions for using a child in a display of sexually explicit conduct, a violation of ORS 163.670, would be constitutional. However, our conclusion applies to the particular combination of circumstances presented here: defendant, when he was 16, 17 and 18 years old, persuaded several girls who were between two to four years younger to take and send to him by cell phone nude self-portraits, and the record lacked evidence that defendant had any interactions with law enforcement or the criminal justice system *118 that would suggest that efforts at reform had failed. Defendant's conduct, although criminal and harmful, does not constitutionally warrant 25 years of imprisonment, which constitutes one of Oregon's most severe punishments for any crime. *644 In Case Nos. C131006CR and C131987CR, remanded for resentencing; otherwise affirmed.

ORS 137.690 provides:
"a. Any person who is convicted of a major felony sex crime, who has one (or more) previous conviction of a major felony sex crime, shall be imprisoned for a mandatory minimum term of 25 years.
"b. 'Major felony sex crime' means rape in the first degree (ORS 163.375 ), sodomy in the first degree (ORS 163.405 ), unlawful sexual penetration in the first degree (ORS 163.411 ), or using a child in a display of sexually explicit conduct (ORS 163.670 ).
"c. 'Previous conviction' includes a conviction for the statutory counterpart of a major felony sex crime in any jurisdiction, and includes a conviction in the same sentencing proceeding if the conviction is for a separate criminal episode as defined in ORS 131.505."

ORS 163.670 provides:
"(1) A person commits the crime of using a child in a display of sexually explicit conduct if the person employs, authorizes, permits, compels or induces a child to participate or engage in sexually explicit conduct for any person to observe or to record in a visual recording.
"(2) Using a child in a display of sexually explicit conduct is a Class A felony."

Case numbers C131006CR and C131987CR were tried together, and both cases included charges that led to defendant's convictions for using a child in a display of sexually explicit conduct and the sentences that defendant challenges in this appeal.

Defendant also challenges his sentences under the Eighth Amendment to the United States Constitution (forbidding "cruel and unusual punishment"). Because we conclude that defendant's challenged sentences are disproportionate under Article I, section 16, we need not reach his Eighth Amendment argument.

It is important to note that, in Ryan , the defendant's argument rested entirely on an assertion that his intellectual disability rendered his 75-month prison sentence unconstitutionally disproportionate. Under Rodriguez/Buck , it is allowable as part of the three-part test for a court to "consider, among other things, the specific circumstances and facts of the defendant's conduct that come within the statutory definition of the offense, as well as other case-specific factors, such as characteristics of the defendant and the victim, the harm to the victim, and the relationship between the defendant and the victim." 347 Or. at 62, 217 P.3d 659.

We rejected a facial challenge to the constitutionality of Ballot Measure 73, which was enacted as ORS 137.690 and ORS 813.011, in State v. Mercer , 269 Or. App. 135, 142, 344 P.3d 109, rev. den. , 357 Or. 299, 353 P.3d 594 (2015), made on the ground that Measure 73 was submitted to the voters in violation of the Article IV, section 1(2)(d) single-subject requirement.

ORS 137.719(1) provides:
"The presumptive sentence for a sex crime that is a felony is life imprisonment without the possibility of release or parole if the defendant has been sentenced for sex crimes that are felonies at least two times prior to the current sentence."
Thus, ORS 137.719 differs from ORS 137.690 in that it requires two convictions prior to a defendant's current sentencing proceeding.

We note that the court has used the term "repeat offender" synonymously with the term recidivist. See Wheeler , 343 Or. at 678, 175 P.3d 438. ("As [Smith and Jensen v. Gladden , 231 Or. 141, 372 P.2d 183 (1962), two decisions that concerned recidivism statutes] made clear many years ago, the legislature may protect society from those who cannot or will not conform their behavior to criminal statutes by imposing more severe sentences on repeat offenders. That is what the legislature did by enacting ORS 137.719(1)."). Similarly, the Supreme Court used the term "repeat offender" in Althouse within the specific context of ORS 137.719 -a recidivist statute. See Althouse , 359 Or. at 687-89, 375 P.3d 475 (using "repeat offender" synonymously with recidivist and relying on Smith , Jensen , and Tuel (also a decision concerning a recidivist statute) ).

Defendant was found not guilty of second-degree rape and second-degree unlawful penetration.

Defendant was acquitted of first-degree encouraging child abuse and strangulation constituting domestic violence.

Defendant was charged and found not guilty of first-degree sexual abuse.

Defendant also argued that the Ballot Measure 11 sentence of 70 months' imprisonment for using a child in a display of sexually explicit conduct was constitutionally disproportionate as applied to his conduct, but does not pursue that argument on appeal.

For purposes of ORS 163.670 and the other child pornography statutes, ORS 163.665(1) defines a "child" as
"a person who is less than 18 years of age, and any reference to a child in relation to a visual recording of the child is a reference to a person who was less than 18 years of age at the time the original image in the visual recording was created and not the age of the person at the time of an alleged offense relating to the subsequent reproduction, use or possession of the visual recording."

Although sexting falls under the wording of ORS 163.670, the concurring opinion sets out legislative history that persuasively establishes that the "legislature has never identified sexting as a social ill that it set about to deliberately criminalize, or affix a penalty to" and that sexting is proscribed by ORS 163.670 by "historical happenstance," not by "deliberate legislative choice." 293 Or. App. at 673, 430 P.3d at 133 (James, J., concurrence).

In any event, as the court stated in Rodriguez/Buck in addressing the state's similar argument regarding the voters' intent as to Measure 11:
"It is certainly true that the passage of Measure 11 demonstrated support for specific sentences, including for first-degree sexual abuse. Voters, however, expressed no opinion as to the imposition of a specific sentence in any particular factual circumstances, much less that any sentence imposed under Measure 11 should be exempt from the usual process of judicial review to determine compliance with constitutional limitations. Had the people of Oregon wished to do so, they could have expressly exempted Measure 11 from the proportionality requirement of Article I, section 16, by amending the Oregon Constitution, as they did when they amended the constitution to permit the death penalty for aggravated murder."
347 Or. at 70 n. 13, 217 P.3d 659. Likewise here, voters did not amend the Oregon Constitution so that the sentences enacted in law would be exempt from judicial review to determine whether they ran afoul of the proportionality requirement of Article I, section 16.

One study reported that 11% percent of teen girls ages 13 to 16 had admitted to producing and distributing nude or seminude pictures of themselves. John A. Humbach, Sexting and the First Amendment , 37 Hastings Const. L.Q. 433, 435 (2010) (citing National Campaign to Prevent Teen and Unplanned Pregnancy, Sex and Tech: Results from a Survey of Teens and Young Adults 1 (2008) ). Another study that analyzed nearly 500 accounts from 12 to 18-year-old girls about negative experiences with sexting discovered that over two-thirds had been solicited to send explicit images of themselves. Study cited by Lisa Damour, Teenagers, Stop Asking for Nude Photos , New York Times (Jan. 2, 2018). See also Lori Tobias, 'Sexting' in Newport: Dumb Prank or Child Porn? , OregonLive, March 28, 2009, http://www.oregonlive.com/news/index.ssf/2009/03/sexting_in_newport_dumb_prank.html (a "sexting" investigation is an example of "a rapidly growing trend in which teens share revealing images of themselves or others via cell phone."); see also 293 Or. App. at 651, 430 P.3d at 121 (James, J., concurring) (discussing prevalence of sexting among teens).

The evidence of harm to the victims, however, comes mostly from their parents. Without meaning to minimize the pattern of exploitive behavior evident in defendant's conduct and the very understandable alarm expressed by the victims' parents, it is worth noting the likelihood that the interpretation of the victims' upset by their parents might well differ from what the victims themselves would identify as the harm they experienced. It appears from the record that all or most of the victims believed their relationship with defendant was an exclusive one and that they were upset when they learned of his contacts with other victims. The record leaves room for doubt that the upset they experienced was actually attributable to the conduct which was the subject of the criminal convictions at issue: inducing the creation and transmission of sexually suggestive images.

The state's view is that defendant's conduct was harmful, in part, because once the victims sent nude images of themselves, they were powerless to prevent those photographs from being circulated to others. We point out, however, that sharing such images is prohibited by ORS 163.684 (first-degree encouraging child sexual abuse) and that defendant was not convicted of that crime. The state acknowledges that the record does not indicate that defendant circulated any of the images.

ORS 163.345 provides:
"(1) In any prosecution under ORS 163.355, 163.365, 163.385, 163.395, 163.415, 163.425, 163.427 or 163.435 in which the victim's lack of consent was due solely to incapacity to consent by reason of being less than a specified age, it is a defense that the actor was less than three years older than the victim at the time of the alleged offense.
"(2) In any prosecution under ORS 163.408, when the object used to commit the unlawful sexual penetration was the hand or any part thereof of the actor and in which the victim's lack of consent was due solely to incapacity to consent by reason of being less than a specified age, it is a defense that the actor was less than three years older than the victim at the time of the alleged offense.
"(3) In any prosecution under ORS 163.445 in which the victim's lack of consent was due solely to incapacity to consent by reason of being less than a specified age, it is a defense that the actor was less than three years older than the victim at the time of the alleged offense if the victim was at least 15 years of age at the time of the alleged offense."

In the context of considering whether the juvenile court erred in waiving its jurisdiction over a 13-year old boy, the Supreme Court in State v. J. C. N.-V. , 359 Or. 559, 599, 380 P.3d 248 (2016), acknowledged research indicating that maturity in adolescents-even late adolescents such as defendant-manifests differently than in adults.
"As one researcher in the field has observed, ' "[m]aturity" itself is not a unified concept; many youth-especially in later adolescence-may be relatively mature in some ways and not in others. They may be intellectually mature but socially immature; they may have mature decision-making capacities in terms of abilities to consider and weigh options, yet be morally immature in the ways in which they apply those abilities.' Thomas Grosso, Clinicians' Transfer Evaluations: How Well Can They Assist Judicial Discretion? 71 La. L. Rev. 157, 184 (2010)."
Defendant's conduct here-sexting with adolescent girls, some several years younger than he was-that was the subject of his 25-year sentences under ORS 137.670 was committed during his late adolescence, a period when adolescents of various ages often interact as a matter of mandatory public school attendance, among other contexts.