249 P.3d 139 (2011)
241 Or. App. 26
STATE of Oregon, Plaintiff-Respondent,
v.
Norman Edward PORTER, Defendant-Appellant.
C080634CR; A140651.
Court of Appeals of Oregon.
Submitted November 30, 2010.
Decided February 23, 2011.
*140 Peter Gartlan, Chief Defender, and Joshua B. Crowther, Senior Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.
John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Erika L. Hadlock, Senior Assistant Attorney General, filed the brief for respondent.
Before SERCOMBE, Presiding Judge, and BREWER, Chief Judge, and LANDAU, Judge Pro Tempore.
BREWER, C.J.
Defendant, who was convicted on three counts of using a child in a display of sexually explicit conduct, ORS 163.670, argues that the trial court erred in denying his motion for a judgment of acquittal, because the state failed to prove that he "permit[ted] * * * a child to participate or engage in sexually explicit conduct for any person to observe or to record in a photograph, motion picture, videotape or other visual recording." For the reasons explained below, we affirm.
We state the facts in the light most favorable to the state. State v. Casey, 346 Or. 54, 56, 203 P.3d 202 (2009). In 2006, defendant, his wife Leblanc-Porter, and two men, Davies and Clements, rented a house in Oregon. They had previously lived together in Arizona. Defendant, who had received money from an inheritance, paid the rent and the household expenses. Various members of the household engaged in sadomasochistic sexual practices with one another, and there were pornographic materials and sexual devices throughout the house.
In early 2007, Leblanc-Porter's 15-year-old daughter, D, came from Arizona to live in the household. D initially was enrolled in a public school, but was soon taken out of school and enrolled in a home-schooling course. At approximately the same time, Leblanc-Porter decided that D should be trained to be sexually submissive to Davies. During the course of more than a month, Leblanc-Porter and Davies sexually abused D in numerous ways. Some of the abuse involved using sexual devices on D, posing D in sexual positions in the common areas of the house, and requiring D to remain in those positions while others observed her. All of the adults in the household were in the common areas at times when D was being abused there, although the physical acts perpetrated against D were committed by Leblanc-Porter and Davies. The charges in the present case stem from three occasions when defendant was present in a room while D was being abused there. It is undisputed that defendant did not actively participate in that sexual abuse. However, D testified that defendant appeared at times to enjoy watching her being abused.
ORS 163.670(1) provides:
"A person commits the crime of using a child in a display of sexually explicit conduct if the person employs, authorizes, permits, compels or induces a child to participate or engage in sexually explicit conduct for any person to observe or to record in a photograph, motion picture, videotape or other visual recording."
Although the crimes at issue here were alleged in the terms of the statute, the parties tried the case as one that involves "permit[ting]." Defendant argued in his motion for a judgment of acquittal, and repeats in this court, that he did not "permit" D to be used in a display of sexually explicit conduct because, although D is his wife's daughter, he had no legal relationship to her. Defendant argues that, "[b]efore one can be said to `permit' something, one must have authority to forbid it." (Quoting State v. Pyritz, 90 Or.App. 601, 605, 752 P.2d 1310 (1988)). According to defendant, therefore, only a person with "legal power to authorize a child to engage in sexual conduct" may be guilty of the crime because only such legal power could forbid the child from engaging in the conduct. Taken to its logical extreme, defendant's argument is difficult to follow, because, given the strictures of ORS 163.670(1), nobody has "legal power" to authorize the use of a child in a display of sexually explicit conduct, as that is precisely the harm the statute seeks to prevent. See generally State v. Stoneman, 323 Or. 536, 547, 920 P.2d *141 535 (1996) (noting that ORS 163.670 describes "the most serious kind of harm covered by this part of the criminal code" and the purpose of this part of the criminal code is to prevent "the underlying harm caused by child sexual abuse"). To the extent that defendant simply means that, to be criminally liable under the statute for "permit[ting]" a child to engage in sexually explicit conduct for another person to observe, a person must have legal responsibility for, or legal authority over, the victim, we disagree.
The word "permits" is not defined in the pertinent statutory scheme. Defendant suggests that its ordinary meaning in this context is "to consent to expressly or formally." Webster's Third New Int'l Dictionary 1163 (unabridged ed. 2002). The ordinary meaning of the word, however, is not so restrictive:
"1: to consent to expressly or formally: grant leave for or the privilege of: ALLOW, TOLERATE 2: to give (a person) leave: AUTHORIZE * * * 4: to make possible Amer. Guide Series: Conn.>"
Thus, "permit" can be used to denote a narrow concept, such as express consent, but it also can mean something less than express consent, such as "tolerate" or "make possible." We also note that "permit" is not a statutory synonym of "authorize," because the latter term is listed separately in ORS 163.670(1). So, the question is whether "permit" is meant to convey a meaning equally or more restrictive than express consent, as defendant suggests, or whether it is meant to convey a somewhat less restrictive meaning, such as "tolerate" or "make possible."
Both parties cite appellate decisions that have examined the meaning of the word "permit" in the context of various criminal statutes, and both assert that the case law construing those statutes supports their respective positions. As explained below, to the extent that the case law concerning different statutes is helpful in understanding the meaning of ORS 163.670, we conclude that, on balance, it supports the state's position.
In State v. Reiland, 153 Or.App. 601, 958 P.2d 900 (1998), we considered the meaning of the word "permit" as used in ORS 163.575, concerning endangering the welfare of a minor. That statute provides in pertinent part that a person commits the crime of endangering the welfare of a minor if the person knowingly "[p]ermits a person under 18 years of age to enter or remain in a place where unlawful activity involving controlled substances is maintained or conducted[.]" Id. at 604, 958 P.2d 900. In Reiland, the defendant had been convicted under both ORS 163.575 and another statute that criminalized "allow[ing] the child to stay * * * on premises and in the immediate proximity where controlled substances are criminally delivered or manufactured for consideration or profit." ORS 163.547(1). In addressing whether those offenses merged, we stated:
"Here, we do not agree that proof that defendant `allowed children to stay' and `permitted children to remain' require proof of different elements. We note at the outset that `allow' and `permit' are synonyms. Webster's Third New Int'l Dictionary 58, 1683 (unabridged ed. 1993), as are `stay' and `remain,' Id. at 2231, 1919. We have previously construed the word `permit' and required that `[b]efore one can be said to "permit" something, one must have authority to forbid it.' State v. Pyritz, 90 Or.App. 601, 605, 752 P.2d 1310 (1988) (construing ORS 167.222(1)). The state argues that the child neglect prohibition against allowing a child to stay in a place where drugs are sold or used requires proof that the person has authority over the child, while the child endangerment prohibition against permitting a child to remain requires proof that the person has authority over the place. That is a distinction without a difference. The owner of the place where drugs are being sold or used has authority over the child by virtue of the person's ownership of the place, just as others have authority over the child by virtue of their positions as parent, guardian, teacher, or public official."
*142 153 Or.App. at 604-05, 958 P.2d 900 (emphasis added). In short, we concluded that, at least for purposes of the statutes at issue there, "permit" and "allow" were synonymous, and that the notion from Pyritz that in order to permit something, "one must have the authority to forbid it," 90 Or.App. at 605, 752 P.2d 1310, encompassed a defendant's authority to forbid a crime from being carried out on his or her property, and not merely his or her legal authority over the child victim involved in the crimes. Thus, Reiland lends some support to the state's position that, in the context of statutes aimed at preventing harm to child victims, words such as "permit" and "allow" need not necessarily relate to one's authority over the child.
On the other hand, both of the statutes at issue in Reiland referred not only to the child victim, but also specifically referred to "a place," ORS 163.575, or "on premises," ORS 163.547, where the offense occurred. ORS 163.670, by contrast, contains no reference to the location where the crime of "using a child in a display of sexually explicit conduct" occurs. Thus, although Reiland undercuts defendant's suggestion that "permits" necessarily refers only to authority over a child victim, it is not dispositive here, given the dissimilarity of the statutes involved.
We turn to Pyritz, on which we relied in Reiland, for further guidance. That case, like Reiland, is of limited utility here, because it concerned "keep[ing], maintain[ing], frequent[ing], or remain[ing]" at a place while knowingly "permitting persons to use controlled substances in such place[.]" 90 Or. App. at 604, 752 P.2d 1310 (emphasis added). The defendant in Pyritz argued that the statute at issue was unconstitutionally vague. In that context, we concluded that "permitting" meant that a person "who, (1) having legal authority over persons who use, keep, or sell illegal controlled substances, at the specified place where the defendant frequents or remains, (2) authorizes or consents to such use, possession, or sale." Id. at 605, 752 P.2d 1310 (omitted). Defendant asserts that this case is like Pyritz and that "permitting" in this context, as in that one, requires legal authority over the victim. Again, however, the parallels between the statutes involved are not strong. The court in Pyritz began its discussion by acknowledging the rather broad definition of the word "permit," when it quoted from Lemery v. Leonard, 99 Or. 670, 678, 196 P. 376 (1921):
"[O]ne cannot be said to have permitted a thing of which he has no knowledge or means of knowledge, so, that, if his animals escape from his enclosure without his knowledge or negligence, he does not come within the prohibitions of the statute against `permitting' his stock to be at large. To `permit' means to allow by tacit consent or by not hindering, taking no steps to prevent, or to grant leave by express consent or authorization."
(Quoting Holly & Co. v. Simmons, 38 Tex. Civ.App. 124, 85 S.W. 325, rev'd, 99 Tex. 230, 89 S.W. 776 (1905)). In Lemerywhich concerned a statute that prohibited an owner from permitting sheep to run "at large"the court focused primarily on the meaning of the term "at large." Lemery, 99 Or. at 673, 196 P. 376. That issue is so far afield from the question here that further discussion of that line of cases would be unhelpful, except to reinforce that, in some contexts, "permitting" carries a rather broad meaning, and in others, a narrower meaning.
Here, the legislature's intent is more apparent when ORS 163.670 is examined in context. As noted, the purpose of ORS 163.665 through 163.693 is to prevent "the underlying harm caused by child sexual abuse." Stoneman, 323 Or. at 547, 920 P.2d 535. Using a child in a display of sexually explicit conduct, ORS 163.670, is a Class A felony, and it is the most serious offense in the pertinent group of offenses. ORS 163.670 proscribes live presentations of sexually explicit conduct involving a child as well as the creation of visual recordings of sexually explicit conduct involving a child.
This group of statutes also includes two Class B felonies. Encouraging child sexual abuse in the first degree, ORS 163.684, applies where a person imports into the state visual depictions of sexually explicit conduct involving a child, or "develops, duplicates, publishes, prints, disseminates, exchanges, displays, finances, attempts to finance or *143 sells" such materials. Possession of materials depicting sexually explicit conduct of a child in the first degree, ORS 163.688, involves using such materials "to induce a child to participate or engage in sexually explicit conduct."
There are also two Class C felonies in the pertinent group of statutes. ORS 163.686, which proscribes encouraging child sexual abuse in the second degree, prohibits various types of possession or purchase of recorded images of sexually explicit conduct involving a child, as well as paying to observe, or observing, sexually explicit conduct by a child, "for the purpose of arousing or gratifying the sexual desires of the person or another person," knowing that the use of the child in a sexual display constituted child abuse. Possession of materials depicting sexually explicit conduct of a child in the second degree, ORS 163.689, involves possession of the materials depicting sexually explicit conduct with the intent to use them to induce a child to engage in sexually explicit conduct.
Finally, the group also includes several Class A misdemeanors. Encouraging child sexual abuse in the third degree, ORS 163.687, generally prohibits the possession of depictions of sexually explicit conduct involving a child for purposes of arousing or satisfying sexual desire, while knowing or failing to be aware of a substantial and unjustifiable risk that the use of the child in a sexual display involved child abuse. Failure to report child pornography, ORS 163.693, applies when a person processes or produces a photograph depicting sexually explicit conduct involving a child but fails to report it to law enforcement agencies. Defenses to the various offenses include an exception for certain medical procedures, educational purposes, and law enforcement purposes, as well as an affirmative defense for each of the offenses, except ORS 163.670, based on lack of knowledge of the victim's age.
Thus, the statutory scheme begins with the most serious offense, which involves the actual creation of child pornography or the use of a child in a sexual display for a live audience. The next level of seriousness concerns distributing child pornography or using child pornography to induce children to engage in sexual conduct. The third descending level of seriousness generally concerns possession or observation of child pornography with the knowledge that a child was abused to create it, or intending to use such materials to induce a child to engage in sexually explicit conduct. Finally, the lowest level of crimes in the group generally involves possession or observation of child pornography while failing to be aware of a substantial and unjustifiable risk that a child was being abused, or, if a person is involved in processing images, failing to report the existence of child pornography. To summarize, the statutory scheme punishes most harshly the creation of child pornography, next, its distribution, beyond that, its use to promote further abuse of children, and finally, its use in general.
If defendant were correct that the phrase "permits * * * a child to participate or engage in sexually explicit conduct" can refer only to a person with legal authority over the child, then the statutewhich, as noted, provides the most serious penalties among child pornography crimeswould not criminalize a significant amount of conduct that occurs in the making or presentation of child pornography. For example, the photographers who record a child engaging in sexually explicit conduct, as well as persons who provide the equipment and the venue for the use of the child in a display of sexually explicit conduct, would commit no crime when they participate in the creation of child pornography. Yet, as the statutory context demonstrates, the conduct of the distributors and consumers of child pornography is criminalized. It is unfathomable that the legislature would have chosen to insulate from prosecution the people who are instrumental in the production of live or recorded displays of sexually explicit conduct by children, while criminalizing the distribution and viewing of such conduct.
Accordingly, we conclude that, when it used in ORS 163.670 the phrase "permits * * * a child to participate or engage in sexually explicit conduct," the legislature did not intend to limit liability to those with a legal relationship to the child; rather, we conclude that the legislature intended "permit" to convey the broader meaning of "allow" or "make possible." In this case, viewing *144 the evidence in the light most favorable to the state, there was sufficient evidence that defendant permitted his stepdaughter to be used in displays of sexually explicit conduct in his home. Accordingly, the trial court properly denied defendant's motion for judgment of acquittal.
Affirmed.