Submitted November 21, 2017; conviction for first-degree ECSA reversed, remanded for resentencing, otherwise affirmed June 17, 2020

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MATTHEW BATES,
*Defendant-Appellant.*

Deschutes County Circuit Court
15CR24683; A160761

472 P3d 768

In this criminal case, defendant appeals his convictions for first-degree encouraging child sexual abuse (ECSA) and endangering the welfare of a minor. He argues that the trial court erred in failing to enter a judgment of acquittal on each of those charges. *Held*: Because the child did not participate or engage in the sexually explicit conduct depicted in the video at issue, the video was not "a visual recording of sexually explicit conduct involving a child" for purposes of ORS 163.684. Accordingly, the trial court erred in failing to enter a judgment of acquittal on the first-degree ECSA count.

Conviction for first-degree ECSA reversed; remanded for resentencing; otherwise affirmed.

Alta Jean Brady, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Erik Blumenthal, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Peenesh Shah, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Powers, Judge, and Mooney, Judge.

POWERS, J.

Conviction for first-degree ECSA reversed; remanded for resentencing; otherwise affirmed.

**POWERS, J.**

In this criminal case, defendant appeals his convictions for first-degree encouraging child sexual abuse (ECSA), ORS 163.684, and endangering the welfare of a minor, ORS 163.575(2). He argues that the trial court erred in failing to enter a judgment of acquittal on each of those charges.[1] We reject his challenge to the conviction for endangering the welfare of a minor without discussion. As explained below, we also conclude that the trial court erred in denying defendant's motion on the ECSA count, because the visual recording at issue is not "a visual recording of sexually explicit conduct involving a child" within the meaning of ORS 163.684(1)(a)(A). Accordingly, we reverse defendant's ECSA conviction, remand for resentencing, and otherwise affirm.

On review of the denial of a motion for judgment of acquittal, we view the facts in the light most favorable to the state and evaluate whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995). To the extent that the parties' dispute regarding the motion for judgment of acquittal "centers on the meaning of the statute defining the offense, the issue is one of statutory construction," which is a matter of law that we review for legal error. *State v. James*, 266 Or App 660, 665, 338 P3d 782 (2014) (internal quotation marks omitted).

Defendant, his wife, and his approximately one-and-one-half-year-old child went to a truck stop and rented a bathroom, including a shower room. The shower room included a shower stall with a bench along one wall of the stall, a curtain separating the shower stall from the rest

---

[1] Although defendant did not move for a judgment of acquittal, his legal argument to the court during closing argument in a bench trial adequately presented and preserved the same issue. *See State v. Gonzalez-Valenzuela*, 358 Or 451, 454 n 1, 365 P3d 116 (2015) ("We agree with the long-standing case law from the Court of Appeals that, under the circumstances [(where the defendant was tried to the court and made an argument about the legal sufficiency of the evidence in closing argument)], defendant's closing argument was the equivalent of a motion for judgment of acquittal and, therefore, preserved the issue that defendant presents."). Accordingly, we proceed as though he moved for a judgment of acquittal.

of the room, and a sink next to the stall. While his wife and child were in the shower with the curtain closed, defendant lay naked on the floor outside the curtain, and made a two-and-one-half minute video of himself engaging in sexually explicit conduct with a dildo. The camera was on or near the floor and faced toward defendant's back, with his feet in the foreground. The shower curtain was visible in the background, beyond defendant's head. At two points during the video, the shower curtain opens for a few seconds and the child is visible, apparently sitting on the bench in the shower stall. When the curtain opens for the second time, defendant hands the dildo to his wife. She hands it back to him a few seconds later, and defendant closes the curtain.

Defendant uploaded the video to YouTube, and he was charged with ECSA after sending a link to the video to an online acquaintance. During a trial to the court, defendant argued that the video was not one of "sexually explicit conduct involving a child," as necessary to convict him of ECSA under ORS 163.684, which is set out below, 304 Or App at 735-36. The court disagreed, reasoning that it was sufficient that the video shows that the child was exposed—albeit briefly—to defendant's sexually explicit conduct.

On appeal, defendant renews his argument that the video at issue is not "a visual recording of sexually explicit conduct involving a child" within the meaning of ORS 163.684(1)(a)(A). He contends that "involving a child," as it appears in that phrase, means "that the child was engaged in the conduct or in some way became a participant, even an unwitting one." *See Webster's Third New Int'l Dictionary* at 1191 (unabridged ed 2002) ("to involve" can mean "to draw in as a participant : ENGAGE, EMPLOY"). The state responds that, because the word "involve" is capable of a wide variety of meanings, "a visual recording of sexually explicit conduct involving a child" covers, "at a minimum, all recordings in which a child has any association whatsoever with the sexually explicit conduct depicted in that recording."[2]

---

[2] The state points out that "to involve" can mean "to have within or as part of itself : CONTAIN, INCLUDE." *Webster's* at 1191. However, the state does not explain, and we do not perceive, any material way in which that definition differs from the one that defendant proposes.

The parties' dispute thus presents a question of statutory interpretation. To resolve it, we apply our familiar statutory-interpretation framework set out in *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009). With the goal of discerning the intention of the legislature, we begin by examining the statute's text, context, and any pertinent legislative history. *Id.* at 172. If the legislature's intent remains ambiguous after that analysis, we may resort to maxims of statutory construction to help resolve the uncertainty. *Id.* As explained below, we conclude that the statutory text, considered in context, is ambiguous. The legislative history, however, fully resolves the textual ambiguity.

As noted above, defendant was convicted of encouraging child sexual abuse in the first degree, ORS 163.684.[3] That statute provides:

"(1)   A person commits the crime of encouraging child sexual abuse in the first degree if the person:

"(a)(A)   Knowingly develops, duplicates, publishes, prints, disseminates, exchanges, displays, finances, attempts to finance or sells a visual recording of sexually explicit conduct involving a child or knowingly possesses, accesses or views such a visual recording with the intent to develop, duplicate, publish, print, disseminate, exchange, display or sell it; or

"(B)   Knowingly brings into this state, or causes to be brought or sent into this state, for sale or distribution, a visual recording of sexually explicit conduct involving a child; and

---

The state also notes that "to involve" can mean "to oblige to become associated (as in an unpleasant situation) : EMBROIL, ENTANGLE, IMPLICATE." *Id*. That definition, however, is inapposite here as a matter of grammar. In that meaning, the subject "involves" someone in something. The state suggests that a defendant involves a child in sexually explicit conduct by obliging the child to become associated with the sexually explicit conduct. However, in ORS 161.684, the phrase "involving a child" uses the present participle to modify "sexually explicit conduct." To use that meaning of "involve," then, we would have to understand the text to say that the sexually explicit conduct "oblige[s a child] to become associated" with an unspecified something else. That meaning does not fit the text. Consequently, we conclude that the legislature did not intend that meaning for "involve." *See Brock v. State Farm Mutual Auto. Ins. Co.*, 195 Or App 519, 526, 98 P3d 759 (2004) ("[W]e do not construe statutes in a manner that is grammatically untenable.").

[3] Defendant was convicted under ORS 163.684(1)(a)(A) for "disseminat[ing]" the video recording at issue.

"(b)   Knows or is aware of and consciously disregards the fact that the creation of the visual recording of sexually explicit conduct involved child abuse.

"(2)   Encouraging child sexual abuse in the first degree is a Class B felony."[4]

That provision is one of a group of statutory provisions that, taken together, prohibit all stages of the production, distribution, possession, and accessing of child pornography. *See* ORS 163.665 - 165.693. The legislature has graded those crimes by the severity of the person's conduct and accompanying culpable mental state. *See State v. Porter*, 241 Or App 26, 33-34, 249 P3d 139, *rev den*, 350 Or 530 (2011) (summarizing the content and gradation of the statutory framework).

The most serious of the child pornography crimes is ORS 163.670, which establishes the offense of using a child in a display of sexually explicit conduct. *Cf. State v. Stoneman*, 323 Or 536, 547-48, 920 P2d 535 (1996) ("ORS 163.670 (1987) described the basic and most serious kind of harm covered by this part of the criminal code and set out the theme that is common to a variety of subsidiary offenses that are described in the remainder of that part: the state's determination to deter the harm that arises from participation of children in sexually explicit conduct for the purpose of visual recording." (Footnote omitted.)). That statute makes it a Class A felony when a person "employs, authorizes, permits, compels or induces a child to participate or engage in sexually explicit conduct for any person to observe or to record in a visual recording." Simply stated, ORS 163.670 prohibits "the actual creation of child pornography or the use of a child in a sexual display for a live audience." *Porter*, 241 Or App at 34.

---

[4] For purposes of all of the child pornography crimes, including ORS 163.684, "sexually explicit conduct" is defined as

"actual or simulated: [s]exual intercourse or deviant sexual intercourse; [g]enital-genital, oral-genital, anal-genital or oral-anal contact, whether between persons of the same or opposite sex or between humans and animals; [p]enetration of the vagina or rectum by any object other than as part of a medical diagnosis or treatment or as part of a personal hygiene practice; [m]asturbation; [s]adistic or masochistic abuse; or [l]ewd exhibition of sexual or other intimate parts."

ORS 163.665(3) (formatting modified).

Thus, the text of ORS 163.670 expressly requires that the child must participate or engage in sexually explicit conduct. ORS 163.670(1) (prohibiting employing, authorizing, permitting, compelling, or inducing "a child to participate or engage in sexually explicit conduct" for certain purposes). First-degree ECSA, ORS 163.684, describes its prohibition differently; that statute prohibits taking a variety of actions with respect to "a visual recording of sexually explicit conduct involving a child." ORS 163.684(1)(a)(A).

The state argues that we should infer from that textual difference—on the one hand, a prohibition on causing or permitting "a child to participate or engage in sexually explicit conduct," ORS 163.670(1), and, on the other hand, a prohibition on taking certain actions with respect to "a visual recording of sexually explicit conduct involving a child," ORS 163.684(1)(a)(A)—that the legislature intended the two provisions to cover different conduct by the child. In the state's view, that textual difference "suggests that the legislature intended involvement to mean something less than participation." *See, e.g.*, *Baker v. Croslin*, 359 Or 147, 157, 376 P3d 267 (2016) (explaining that, as a general rule, alternative terms do not mean the same thing unless there is evidence to the contrary). We agree with the state's assertion that that is a plausible understanding of the textual differences between the statutes, but do not agree that that plausible understanding is necessarily determinative. *See State v. Lane*, 357 Or 619, 629, 355 P3d 914 (2015) (explaining that the fact that the legislature has used different terms "does not, by itself, require the terms to have different meanings"; rather, "[s]uch 'rules' of interpretation are mere assumptions that always give way to more direct evidence of legislative intent").

It is equally plausible that the legislature chose different phrases to describe the same conduct because of other differences between the two statutes. The relevant text of ORS 163.670 is not describing the content of a visual recording; it is directly describing the child's action. ORS 163.670(1) prohibits employing, authorizing, permitting, compelling, or inducing "a child to participate or engage in sexually explicit conduct for any person to observe or to

record in a visual recording." By contrast, ORS 163.684 pro-
hibits taking a variety of actions whose object is "a visual
recording of sexually explicit conduct involving a child."
That text is describing the characteristics of the prohibited
object, a visual recording; it does not directly describe the
child's action. That difference in the structure of the stat-
utes suggests that the legislature could have chosen dif-
ferent phrases in the two statutes not to signify that the
child's relationship to the sexually explicit conduct had to
be different, but, rather, because the statutes are describ-
ing different things—in one, the child's actions, in the other,
the nature of the visual recording. *See Wittemyer v. City of
Portland*, 361 Or 854, 863-64, 402 P3d 702 (2017) (recogniz-
ing that the presumption that different terms have different
meanings may be rebutted by evidence that the legislature
intended the contrary).

     Before turning to the legislative history, we note
another contextual consideration based on the structure of
the statutory framework. If, as the state argues, the two
phrases have different meanings, then there are some
"visual recording[s] of sexually explicit conduct involving a
child" whose actual creation is not prohibited by the child
pornography statutes. As set out above, ORS 163.684 pro-
hibits developing, duplicating, publishing, printing, dissem-
inating, exchanging, displaying, and financing "a visual
recording of sexually explicit conduct involving a child."
Second- and third-degree ECSA, ORS 163.686 and ORS
163.687, prohibit possessing, controlling, and accessing such
a visual recording. ORS 163.670 provides a counterpart to
those statutes that prohibits "the actual creation of child
pornography." *Porter*, 241 Or App at 34. If "a visual record-
ing of sexually explicit conduct involving a child" includes
more visual recordings than only those that depict a child
"participat[ing] or engag[ing] in sexually explicit conduct,"
then the statutory framework does not prohibit the actual
creation of some of the visual recordings that are prohib-
ited. In this particular statutory framework, it is not likely
that that is what the legislature intended. *See id.* at 35 ("It
is unfathomable that the legislature would have chosen to
insulate from prosecution the people who are instrumen-
tal in the production of live or recorded displays of sexually

explicit conduct by children, while criminalizing the distribution and viewing of such conduct.").

  With those observations in mind, we turn to the legislative history. In 1995, the legislature enacted a bill establishing the three offenses of first-, second-, and third-degree ECSA in response to our opinion in *State v. Stoneman*, 132 Or App 137, 888 P2d 39 (1994), *rev'd*, 323 Or 536, 920 P2d 535 (1996).[5] Or Laws 1995, ch 768; *see* Tape Recording, House Committee on Judiciary, Subcommittee on Family Justice, HB 2692, Feb 23, 1995, Tape 28, Side A (statement of legislative counsel Virginia Vanderbilt). The goal was to demonstrate that the statutory prohibition on child pornography was focused on the harm of sexual exploitation of children, not merely on expression. Tape Recording, House Committee on Judiciary, Subcommittee on Family Justice, HB 2692, Feb 23, 1995, Tape 28, Side A (statement of legislative counsel Virginia Vanderbilt).

  To advance that goal, the 1995 bill reformulated then-existing prohibitions on child pornography to focus on the underlying harm to children. It reused the text "a visual recording of sexually explicit conduct involving a child" from the provisions that it was replacing. *Compare former* ORS 163.680(2) (1991), *repealed by* Or Laws 1995, ch 768, § 16 ("It is unlawful for any person to pay, exchange or give anything of value to obtain or view a photograph, motion picture, videotape or other visual recording of sexually explicit conduct involving a child.") *with* Or Laws 1995, ch 768, § 2(1) (a person commits first-degree ECSA when the person knowingly takes certain actions with respect to "any photograph, motion picture, videotape or other visual recording of sexually explicit conduct involving a child").

---

  [5] In *Stoneman*, we considered the constitutionality of the 1987 version ORS 163.680, which prohibited paying or giving anything of value "to obtain or view a photograph, motion picture, videotape or other visual reproduction of sexually explicit conduct by a child under 18 years of age." *Former* ORS 163.680 (1987), *repealed by* Or Laws 1995, ch 768, § 16; *Stoneman*, 132 Or App at 139 n 1. We concluded that the statute violated Article I, section 8, of the Oregon Constitution because it focused on the content of the materials rather than focusing on harmful effects. *Stoneman*, 132 Or App at 144. The Supreme Court eventually disagreed and reversed, *Stoneman*, 323 Or 536, but the legislature acted before the Supreme Court issued its decision.

That text originally was enacted in House Bill (HB) 2681 (1991), in which the legislature revised the child pornography statutes and also prohibited possession—as opposed to creation, distribution, or purchase, which were already prohibited—of child pornography for the first time. Or Laws 1991, ch 664, § 2. In that bill, the legislature replaced the existing descriptions of prohibited visual recordings—which varied slightly but were similar to a recording that "depicts a child under 18 years of age in an act of sexually explicit conduct"—with the uniform phrase "sexually explicit conduct involving a child."[6]

Because it is important to the remainder of our analysis, we pause here to review the parties' textual arguments with respect to that key phrase added by HB 2681: Defendant contends that "to involve" means "to draw in as a participant : ENGAGE, EMPLOY," *Webster's* at 1191, and, consequently, that "a visual recording of sexually explicit conduct involving a child" means a visual recording in which "the child was engaged in the conduct or in some way became a participant, even an unwitting one." Thus, under defendant's view, the textual change in 1991 that replaced a variety of phrasings, including "depicts a child under 18 years of age in an act of sexually explicit conduct," with the uniform phrase "sexually explicit conduct involving a child," did not change the scope of the statutes; rather, the legislature intended a meaning for "involving a child" that is synonymous with the pre-1991 phrasings.

The state asserts that "to involve" has a broad range of meanings and that, as a result, the phrase "a visual recording of sexually explicit conduct involving a child" means "at a minimum, all recordings in which a child has any association whatsoever with the sexually explicit conduct depicted in that recording." The state argues that the

---

[6] *See* Or Laws 1991, ch 664, § 6 (replacing "any photograph or other visual recording that depicts a child under 18 years of age in an act of sexually explicit conduct" with "any photograph, motion picture, videotape or other visual recording of sexually explicit conduct involving a child"); *id.* at § 7 (same); *id.* at § 10 (replacing "depicts a child under 18 years of age engaged in sexually explicit conduct" with "depicting sexually explicit conduct involving a child"); *id.* at § 11 (replacing "[a]ll visual or printed matter that depicts a child under 18 years of age engaged in sexually explicit conduct" with "[a]ny photograph, motion picture, videotape or other visual recording of sexually explicit conduct involving a child").

textual change in 1991 broadened the scope of the statutes, so that, rather than prohibiting only depictions of a child "in an act of sexually explicit conduct," the statutes prohibited a much broader category of materials, including any visual recording of sexually explicit conduct in which the child has any association whatsoever with the conduct.

The legislative history unambiguously supports defendant's view: By replacing the clause "depicts a child *** in an act of sexually explicit conduct" with the clause "sexually explicit conduct involving a child," the legislature did not intend to change the scope of the statutes. Warren Deras, the drafter of HB 2681, presented the House and Senate committees that considered the bill with a summary of the bill entitled "House Bill 2681, Prohibit Possession of Child Pornography, Bill Objectives and Outline." Exhibit D, House Committee on Judiciary, Subcommittee on Family Justice, HB 2681, Mar 8, 1991; *see also* Exhibit H, Senate Committee on Judiciary, HB 2681, May 29, 1991. The summary explained, "[t]he primary purpose of the bill is to criminalize possession of child pornography. Existing law prohibits pornographic display of a child, production and distribution of child pornography, and purchase of child pornography." Exhibit D at 1. With respect to the textual changes noted above, the summary explained,

> "It was noted in preparing the bill that language is not used consistently in the existing statutes. Rather than create an unintended inference that different meanings were intended, the language in the statutes is brought into a common mold.

> "The subject of the restrictions in the law is variously stated as 'a photograph or other visual recording,' 'a photograph, motion picture, videotape or other visual reproduction, and 'visual or printed matter.' There are also references to depictions of a child 'in an act' or 'engaged in.' This bill revises these various statutes to consistently use the phrase 'photograph, motion picture, videotape or other visual recording depicting sexually explicit conduct involving a child."

*Id.* at 2-3. That summary demonstrates that the change of phrasing was intended only to make the statutory text uniform, not to expand its scope.

Consistently with that understanding, the proponents of HB 2681 who testified before the House and Senate committees that considered the bill had a uniform and clearly stated understanding that (1) the statutory framework already prohibited the creation, production, distribution, and purchase of a consistently defined group of materials, which they referred to as child pornography, and (2) the effect of the bill would be to fill a gap in the framework by prohibiting possession of the same materials. As noted above, Deras explained that "[e]xisting law prohibits pornographic display of a child, production and distribution of child pornography" and the "primary purpose of the bill is to criminalize possession of child pornography." Exhibit D at 1; *see also* Tape Recording, House Committee on Judiciary, Subcommittee on Family Justice, HB 2681, March 8, 1991, Tape 50, Side A (statement of Warren Deras) (explaining the operation of the then-current statutory framework and that, after enactment of the proposed bill, the statutory framework "still imposes a significantly harsher penalty on those who are directly involved at the commercial level in the production and distribution of [child pornography]").

Another proponent, Assistant United States Attorney Jeffrey Kent, provided the committees with a letter that explained that one of the numerous advantages of "a law criminalizing the very possession of child pornography" would be that "[i]t attacks a vital link in the distribution chain—the possessor, who creates the demand for such material." Exhibit C, House Committee on Judiciary, Subcommittee on Family Justice, HB 2681, March 8, 1991 (testimony of Jeffrey J. Kent) (incorporating "Concerned Citizen" letter, at 2); *see also, e.g.*, Exhibit B, House Committee on Judiciary, Subcommittee on Family Justice, HB 2681, March 8, 1991 (testimony of "chief Senate sponsor of HB 2681," Sen Larry Hill) ("[The bill] can benefit from years of judicial and legislative experience in defining child pornography. The definitions of child pornography are already on the books and, thankfully, we do not have to worry over whether or not this law will accidentally cover baby pictures. HB 2681 draws on existing definitions of child pornography * * *." (Underscoring in original.)). HB 2681 was intended to fill a gap in the existing statutory framework, which already defined child

pornography and prohibited its creation, distribution, and purchase, but not possession. HB 2681 added a prohibition on possession, and it was not intended to expand the statutory framework to include a broader array of materials than it had previously covered.

Finally, the proponents of the bill did not leave unstated what they meant by "child pornography." Rather, they explained that, when they discussed "child pornography," they were referring to depictions of children participating or engaging in sexually explicit conduct. Kent testified about the constitutionality of prohibiting possession of child pornography and noted that the United States Supreme Court had recently upheld a similar statute in *Osborne v. Ohio*, 495 US 103, 110 S Ct 1691, 109 L Ed 2d 98 (1990). Attached to his written testimony was a law review article that he had co-authored, arguing that states should criminalize possession of child pornography. Exhibit C, House Committee on Judiciary, Subcommittee on Family Justice, HB 2681, March 8, 1991 (testimony of Jeffrey J. Kent) (incorporating Jeffrey J. Kent & Scott D. Truesdell, *Spare the Child: The Constitutionality of Criminalizing Possession of Child Pornography*, 68 Or L Rev 363 (1989)). The article expressly defined "child pornography" as "'works that visually depict sexual conduct by children below a specified age.' [*New York v.* ]*Ferber*, 458 US [747, 764, 102 S Ct 3348, 73 L Ed 2d 1113 (1982)]." Kent & Truesdell, 68 Or L Rev at 365 n 8 (emphasis omitted).

Another witness was equally clear that the subject of the statutes was children engaging in sexually explicit conduct. Paul Groza, United States Postal Inspector, Portland Division Child Pornography Specialist, presented written testimony that explained:

> "I believe what we need to make clear is what we are stating is child pornography. We are not talking about all types of photographs or films of children. What we are talking about is only that type of photograph or film that is produced with the intent that it depict the child engaged in sexually explicit conduct."

Exhibit G, House Committee on Judiciary, Subcommittee on Family Justice, HB 2681, March 8, 1991, 6 (testimony of Paul

Groza). Likewise, Dean Renfrow, Criminal Investigation Division Director of the Oregon State Police, testified that "[f]or every picture of a child engaging in sexually explicit conduct, there is at least one child that has been victimized and exploited. It makes no difference where the child is from or where the picture was taken." Exhibit F, House Committee on Judiciary, Subcommittee on Family Justice, HB 2681, March 8, 1991, 2-3 (testimony of Dean L. Renfrow).

In sum, the legislative history demonstrates that, by replacing the phrases "depicts a child under 18 years of age in an act of sexually explicit conduct" and "a child under 18 years of age engaged in sexually explicit conduct" with the uniform phrase "sexually explicit conduct involving a child," the legislature did not intend to broaden the scope of the statutory framework. Rather, the legislature intended the text "a visual recording of sexually explicit conduct involving a child" to mean a visual recording in which a child engages or participates in sexually explicit conduct.

The state does not argue, and we have found no indication, that the legislature intended the same text to have a different meaning when it was reenacted in 1995 as part of ORS 163.684. Thus, we conclude that "a visual recording of sexually explicit conduct involving a child" refers to a visual recording in which a child participates or engages in sexually explicit conduct.

That understanding of the text of ORS 163.684 also resolves the potential inconsistency between the scope of that statute and the scope of ORS 163.670. The crime of causing or permitting "a child to participate or engage in sexually explicit conduct for any person *** to record in a visual recording" in ORS 163.670(1) prohibits the creation of the same materials of which ORS 163.684 prohibits development, duplication, publication, printing, dissemination, exchange, display, finance, and sale.

With that understanding, we turn to whether the video at issue here is "a visual recording of sexually explicit conduct involving a child." ORS 163.684(1)(a)(A). We addressed a similar question in *State v. Richardson*, 261 Or App 95, 323 P3d 311, *rev den*, 355 Or 880 (2014). In that case, the defendant was convicted of two counts of using a child in a

display of sexually explicit conduct, ORS 163.670, and one count of first-degree ECSA, ORS 163.684, based on two photographs that he had taken. *Id.* at 97. In describing the contents of the two photographs, we observed:

"Exhibit 1 was taken from defendant's point of view and shows a woman either about to engage in, or having recently engaged in, oral-genital contact with defendant. The child, fully clothed, is standing to the left of the woman, looking at defendant's visibly exposed penis. The woman is unclothed, facing defendant, and pushing the child away with her arm. Defendant and the woman are not touching each other.

"Exhibit 3 was also taken from defendant's vantage point. The same woman, again unclothed, is engaging in oral-genital contact with defendant. The same child who appears in Exhibit 1 is fully clothed, standing to the left of the woman near her elbow, and looking at the sex act. One of the child's hands is touching defendant's naked leg and the other appears to be reaching towards defendant. The child is wearing different clothes and appears to be younger than in Exhibit 1."

*Id.* at 98-99 (footnote omitted).

We first considered whether Exhibit 3 showed "the child participating or engaging in the sexually explicit conduct that is pictured." *Id.* at 101 (internal quotation marks and brackets omitted). The defendant argued that the photograph did not show "the sort of active engagement that ORS 163.670 requires." *Id.* at 102 (internal quotation marks omitted).

We agreed with the defendant's argument that "mere proximity to, or observation of, sexually explicit conduct is not sufficient to prove that a child is participating or engaging in that conduct." *Id.* Importantly, however, "a viewer of Exhibit 3 could reasonably infer that the photograph shows more than mere proximity and observation." *Id.* We explained that, in Exhibit 3, it was significant that "the child is touching one of the persons who is unequivocally engaged in sexual conduct." *Id.* We noted that touching one of the participants might satisfy the requirement that the child participate or engage in the sexually explicit conduct. *Id.*

To the extent that touching a participant, alone, is not enough in some circumstances, we explained that whether a child is participating or engaged in sexually explicit conduct may depend, in part, on the intentions of others. *Id.* That is, a child who is not directly participating or engaged in sexually explicit conduct but who is touching adults who are directly engaged in sexually explicit conduct can nevertheless fall within the meaning of the statute if the presence of the child can be inferred to further one or more of the participants' sexual purpose.[7] *Id.* at 103. Applying that standard, we concluded that (1) the child was touching one of the participants and (2) the circumstances allowed an inference that the defendant had included the child in the photograph for a sexual purpose. *Id.* Thus, the child was engaged or participating in the sexually explicit conduct as required by ORS 163.670. *Id.* Turning to Exhibit 1, we concluded that the same analysis applied, and, thus, affirmed the defendant's convictions on both counts of using a child in a display of sexually explicit conduct. *Id.* at 103-04.

Then we turned to the defendant's challenge to his conviction under ORS 163.684. *Id.* at 104. We agreed with the defendant's argument "that conduct 'involving' the child is more or less synonymous with conduct in which the child participated or was engaged to participate in," *id.*, and, consequently, reached the same conclusion that we had regarding ORS 163.170. *Id.*

Thus, *Richardson* establishes that, under both ORS 163.170 and ORS 163.684, the child need not be a direct participant in the sexually explicit conduct; that is, the child

---

[7] In the course of our discussion, we explained our understanding that a person may participate or engage in conduct without "actively exercise[ing] his or her volition to participate; a person can become a participant by virtue of another participant's actions." *Richardson*, 261 Or App at 102. We continued, "[f]or example, if a bank robber hijacks an unwitting motorist and demands to be taken to an address, the motorist can be seen as a participant—albeit an innocent one—in the crime; it could be said that the robber 'engaged' the motorist in the robbery." *Id.*

Although we agree with that general principle, we pause to clarify that the ultimate question regarding the child's actions under the statute is whether the child "participate[d] or engage[d] in sexually explicit conduct," not whether the defendant engaged the child in the conduct. *See id.* at 97 n 1 (quoting ORS 163.670(1) (2009)).

need not be personally engaged in one of the enumerated acts set out in ORS 163.665(3). In this case, the state argues that we should understand *Richardson* also to hold that touching or physical proximity to the people actually engaged in the sexually explicit conduct is unnecessary; rather, the state contends, *Richardson* establishes that a child participates or engages in sexually explicit conduct any time a factfinder could infer that the child was included in a visual recording for a sexual purpose and the visual recording also depicts sexually explicit conduct.

We disagree. In *Richardson*, our discussion of the defendant's sexual purpose is not separate from our consideration of the fact that, in each of the photographs at issue there, the child was touching one of the participants in the sexually explicit conduct.[8]

Moreover, that interpretation would be inconsistent with the legislative intent for the statutory framework discussed above. As we have explained, the legislature intended "a visual recording of sexually explicit conduct involving a child" to be synonymous with a visual recording that "depicts a child *** in an act of sexually explicit conduct." In other words, even if the child is not directly and personally doing one of the enumerated activities that constitute sexually explicit conduct, the child must nevertheless have some direct part in the sexual act.

In *Richardson*, the child took part in the act by touching the defendant, in one photograph, and the woman, in the other, while the adults were engaging in sexually explicit conduct. 261 Or App at 103. The factfinder could infer that the child was a participant—not merely an uninvolved bystander or observer—because, in addition to the fact that the child was touching the participants, the totality of the circumstances allowed an inference that the defendant had intended the child's presence to further his sexual purpose. *Id.*

---

[8] To the extent that our discussion in *Richardson* could be understood to suggest that it is sufficient that the factfinder could infer the child is in the visual recording for a sexual purpose, any such suggestion was *dicta*, because the photographs at issue showed the child touching the defendant and the woman. As stated in the text above, however, that is not how we understand the opinion.

By contrast, in this case, the child had no part at all in the act; she was engaged in a different, unrelated, and nonsexual activity—taking a shower with her mother—and was physically removed from defendant while he engaged in sexually explicit conduct. Even if, as the state contends, a factfinder could infer that defendant intended the child's presence to further his sexual purpose, that inference, alone, does not show that the child participated or engaged in the sexually explicit conduct. Because the child did not participate or engage in the sexually explicit conduct, the video was not "a visual recording of sexually explicit conduct involving a child" for purposes of ORS 163.684. Accordingly, the trial court erred in failing to enter a judgment of acquittal on the first-degree ECSA count.

Conviction for first-degree ECSA reversed; remanded for resentencing; otherwise affirmed.